**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**EASTERN DIVISION**

ERNEST PIPPIN,                                )
                                             )
           Defendant/Movant,  )
                                             )
    vs.                                      )        CASE NO. 3:07-CV-613-MHT
                                             )        (CR-3:06-150-MHT)
UNITED STATES OF AMERICA,     )
                                             )
           Respondent.             )

## GOVERNMENT'S RESPONSE TO § 2255 MOTION

COMES NOW the United States of America (the Government), the Respondent in this case,

and, in compliance with this Court's order to show cause, responds to Defendant/Movant Ernest

Pippin's Motion Under § 2255 to Vacate, Set Aside, Or Correct Sentence By a Person In Federal

Custody, as follows:

## I. PROCEDURAL HISTORY AND RELEVANT FACTS

On June 14, 2006, a grand jury for the Middle District of Alabama returned a four-count

indictment against Defendant/Movant Ernest Pippin.  *(See* Attachment A, a copy of the indictment

in this case.)  The indictment charged that: on or about February 25, 2003, within the Middle District

of Alabama, the defendant did knowingly mail and transport and ship in interstate and foreign

commerce by any means, including by computer, any child pornography, in violation of Title 18,

United States Code, Section 2252A(a)(1); that on or about March 21, 2003, within the Middle

District of Alabama, the defendant did knowingly mail and transport and ship in interstate and

foreign commerce by any means, including by computer, any child pornography, in violation of Title

18, United States Code, Section 2252A(a)(1); that on or about March 16, 2005, within the Middle

District of Alabama, the defendant did knowingly possess any book, magazine, periodical, film,

videotape, computer disk, and any other material that contains, an image of child pornography that has been mailed, shipped, and transported in interstate, and foreign commerce by any means, including by computer, in violation of Title 18, United States Code, Section 2252A(a)(5)(B); and, that on about March 16, 2005, within the Middle District of Alabama, the defendant having been previously convicted in a court, of crimes punishable by imprisonment for a term in excess of one year, to-wit: Sexual Abuse in the First Degree in the Circuit Court of Russell County, Alabama (CC 92-76 and 92-77), knowingly possessed firearms, in and affecting commerce, that is a Charter Arms, Undercover, .38 caliber revolver, serial number 542073;  a Llama, .380 caliber semi-auto pistol, serial number A89106; an Excam, GT-27, .25 caliber semi-auto pistol, serial number M17052; a Chamri, 12 gauge shotgun, serial number 295778; a Stevens, Model 940, unknown caliber shotgun, serial number unknown; a Hercules, 410 gauge shotgun, serial number unknown; a Springfield Armory, Model 1903, serial number unknown, better descriptions of which are unknown to the Grand Jury, in violation of Title 18, United States Code, Section 922(g)(1).  Pippin initially entered a plea of not guilty at his arraignment on June 21, 2006.

Subsequently, Pippin entered into a plea agreement with the Government.  *(See* Attachment B, a copy of the plea agreement in this case.)  In return for a plea of guilty to the charges in the indictment, the Government agreed to recommend a sentence of not more than 15 years on Counts 1 and 2, not more than 10 years on Count 3, and not more than 7 years on Count 4, all to run concurrent with each other, and to file a motion for a reduction in sentence of three levels for acceptance of responsibility.  *(Id.* At p. 3 - 4.)

On August 3, 2006, Pippin changed his plea to guilty.  *(See* Attachment C, a copy of the August 3, 2006 plea hearing in this case.)  After the Court ascertained the terms of the plea

agreement, insured that Pippin understood those terms (*Id*. at 1-5.), and that the plea agreement contained all of the agreements between the parties (*Id*. at 5.), the Court outlined for Pippin the maximum penalties for his charged crimes. (*Id*. at 6-7.) Pippin had previously informed the Court, under oath, that he was satisfied with his attorney's advice (Id. at 4.), and informed the Court that information about the U.S. Sentencing Guidelines and their impact on his plea were sufficiently discussed with his attorney. (*Id*. at 7-8.) Next, the Court outlined the rights that Pippin would be relinquishing by pleading guilty (*Id.* at 8-10.) and explained the charges in the indictment to him. (*Id.* at 10-13) The Court, with the aid of the United States, elicited from the Defendant an extensive and exhaustive factual basis for the plea. (*Id*. at 13- 20.) The Court then accepted Pippin's guilty plea. *(Id*. at 21.)

A presentence investigation report was ordered and prepared by the U.S. Probation Office in this case. (*See* Attachment D, a copy of Pippin's presentence investigation report.) The report recommended a total offense level of 37, a criminal history category of I and a guideline imprisonment range of 210-262 months.( *Id*. at 12.) Defense counsel filed written objections to the report, and the presentence investigation reflects that those objections were resolved prior to sentencing. (*Id.* at Addendum 1.)

A sentencing hearing was held on October 12, 2007. (*See* Attachment E, a copy of the October 12, 2007 sentencing hearing in this case.) The Court accepted the plea agreement, and adjudicated the defendant guilty. (*Id.* at 13.) The Court adopted the factual findings of the presentence investigation and sentenced the defendant to 180 months on counts 1-2, 120 months on count 3, and 84 months on count 4, all to run concurrently with each other, $400 in court assessment fees, and lifetime supervised release.(*Id.* at p. 15-16.)

Pippin filed a Notice of Appeal on November 27, 2006. On February 6, 2007, the Eleventh Circuit Court of Appeals, by mandate, issued a final judgment dismissing Pippin's appeal for untimeliness.

Pippin filed his Motion to Vacate, And Or Correct Sentence on June 26, 2007. On July 3, 2007, this Court entered an order directing the Government to respond on or before August 2, 2007. The Government requested and received three (3) extensions and now files this response to the § 2255 motion.

## II. CLAIMS RAISED IN THE § 2255 MOTION

As far as the Government can discern, Pippin raises the following issues in his § 2255 motion:

1.      Counsel provided ineffective assistance by failing to file a direct appeal as directed by Pippin;

2.      Counsel provided ineffective assistance by failing to communicate with Pippin;

3.      Counsel provided ineffective assistance by failing to explain process and procedure to Pippin;

4.      The district court violated Pippin's Constitutional rights by refusing to appoint appellate counsel to aid petitioner.

## III. RESPONSE TO CLAIMS FOR RELIEF

**A.      Pippin Has Met The One-Year Statute Of Limitations Deadline For The Filing of Claims Under 28 U.S.C. § 2255.**

As an initial matter, it should be noted that Pippin has filed his § 2255 motion in a timely manner under paragraph six of 28 U.S.C. § 2255, which provides a one-year period of time within which to file a motion under the rule.  The applicable provision in this case requires that a movant

file his § 2255 motion within one year from "the date on which the judgment of conviction became final."

Pippin was sentenced on October 12, 2006, and appealed his sentence to the Eleventh Circuit Court of Appeals. The Eleventh Circuit dismissed his appeal on February 6, 2007. The Eleventh Circuit has held that a judgment of conviction becomes final for someone who appeals to the appellate court when the time for seeking certiorari review in the Supreme Court expires. *See, Kaufman v. United States,* 282 F.3d 1336, 1337-39 (11th Cir.2002), *cert. denied*, No. 01-10986, 2002 WL 1434325 (U.S. May 1, 2002). Because Pippin had ninety days from entry of judgment by a United States court of appeals to petition for certiorari review, his judgment of sentence became final on May 7, 2007. *See* Sup. Ct. R. 13.1. Therefore, under § 2255, Pippin had until May 7, 2008 - one year from May 7, 2007 - to file his motion. He filed his motion on, at the latest, July 2, 2007. It is, therefore, timely.

**B.    All of Pippin's Ineffective Assistance of Counsel Claims Should Be Rejected Because They Are Without Any Merit.**

Pippin alleges his counsel was ineffective for three different reasons: (1) for failing to file a direct appeal; (2) for failing to communicate with Pippin while the case was pending in the District Court; and (3) for failing to fully inform Pippin about process and procedure during the proceedings in the District Court. As is demonstrated below, Pippin was not denied the effective assistance of counsel as he claims.

To succeed on a claim of ineffective assistance of counsel, a defendant must prove both that his counsel's performance was deficient and that the deficient performance prejudiced his case. *Strickland v. Washington,* 466 U.S. 668 (1984); *see also*, *Bell v. Cone,* 122 S. Ct. 1843 (2002) (Supreme Court reaffirming the *Strickland v. Washington* standard for reviewing ineffective

assistance of counsel claims); *Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001) (Eleventh Circuit applying two-part test of *Strickland v. Washington*), *cert. denied,*122 S. Ct. 1185 (2002). More specifically, Pippin must show that (1) identified acts or omissions of counsel fell below an objective standard of reasonableness, and (2) that his counsel's alleged errors or omissions resulted in prejudice to him to such an extent that, without counsel's alleged errors or omissions, there is a reasonable probability that the outcome of his trial would have been different. *Yordan v. Dugger,* 909 F.2d 474, 477 (11th Cir. 1990).

In analyzing counsel performance under the performance prong of *Strickland*, this Court must presume that the conduct of counsel was reasonable, *Yordan v. Dugger,* 909 F.2d at 477. A "[d]efendant must prove deficient performance by a preponderance of competent evidence, and the standard is 'reasonableness under prevailing professional norms.'" *Gallo-Chamorro v. United States*, 233 F.3d 1298, 1303-04 (11th Cir. 2000)(footnotes omitted). The Eleventh Circuit has described a defendant's burden with regard to the deficient performance prong of an ineffective assistance of counsel claim as follows:

> Because there is such a wide range of constitutionally acceptable performance, a petitioner seeking to rebut the presumption of adequate performance must bear a heavy burden:
>
>> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. ... We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.
>
>> ... Thus, in order to show that counsel's performance was unreasonable, the petitioner must establish that *no competent counsel would have take the action that his counsel did take....*

*Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (some internal citations omitted).

The Eleventh Circuit has described a defendant's burden in demonstrating that his counsel's deficient performance prejudiced his case as "high", noting that it is not enough to show that any errors had some conceivable effect on the outcome of the proceeding. *Robinson v. Moore*, 300 F.3d 1320, 1343-44 (11th Cir. 2002). To succeed on the ineffective assistance of counsel claim, the defendant must show that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different. In the guilty plea context, to satisfy the prejudice requirement, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *United States v. Pease*, 240 F.3d 938, 941 (11th Cir.)(*citing Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)), *cert. denied*, 122 S. Ct. 381 (2001).

Finally, "[i]t is well established that a habeas petitioner must demonstrate both deficient performance and prejudice, and that a failure to demonstrate either prong constitutes a failure to demonstrate ineffective assistance of counsel." *Bottoson v. Moore*, 234 F.3d 526, 532 (11th Cir. 2000); *accord, Robinson v. Moore*, 300 F.3d at 1343.

As to each of his claims of ineffective assistance of counsel, Pippin has failed to plead facts sufficient to demonstrate that counsel's performance was deficient. For that reason, his § 2255 motion should be summarily dismissed.

### 1. <u>Counsel provided ineffective assistance by failing to file a direct appeal.</u>

Pippin claims that his counsel was ineffective because he failed to file a direct appeal as directed by Pippin. He does not, however, submit any additional facts or documentation which support this claim. Where counsel fails to file a notice of appeal after having been so instructed by his client, a showing of prejudice is not required, as the United States Supreme Court has long

recognized that such action is both professionally unreasonable and presumptive prejudicial.  See *Roe v. Flores-Ortega*, 528 U.S. 470, 477, 484-85 (2000).  The Eleventh Circuit has consistently held that, in these circumstances, defendants need not show viable grounds for the requested appeal.  *See Gomez-Diaz v. United States*, 433 F.3d 788 (11th Cir. 2005); *McIver v. United States*, 307 F.3d 1327, 1330 at n.1 (11th Cir. 2002); *Martin v. United States*, 81 F.3d 1083 (11th Cir. 1996); *Montemoino v. United States*, 68 F.3d 416, 417 (11th Cir. 1995).

Crucial to a Court's ruling that an appeal be permitted in circumstances such as those alleged by Pippin is a finding that the defendant did, in fact, instruct his attorney to file a notice of appeal.  In the *McIver* and *Martin* cases, the fact of counsel's failure to file the requested notice of appeal was established in the record.  *See McIver*, 307 F.3d at 1329; *Martin*, 81 F.3d at 1084.  In *Montemoino*, the Eleventh Circuit remanded the case for a hearing to determine whether the facts supported the defendant's allegation that he actually requested an appeal, and conditioned relief on a finding that the request was made.  *Montemoino*, 68 F.3d at 418.  *See also United States v. Snitz*, 342 F.3d 1154, 1156 (10th Cir. 2003)(where the district court acknowledged the defendant's "credible testimony that immediately following his sentencing, he told his attorneys he wanted to appeal his sentence.")

The recent decision in *Gomez-Diaz v. United States* is consistent with past cases on the issue raised in Pippin's motion.  That case presented a petitioner who, the district court determined, "explicitly asked his attorney to appeal," but was persuaded not to by the attorney.  *Gomez-Diaz*, 433 F.3d at 791.  The Eleventh Circuit remanded with instructions for the district court to determine

> (1) whether Petitioner's initial statement of his desire to appeal was sufficient to trigger the per se duty to appeal outlined in *Flores-Ortega*; and (2) if not, whether Petitioner's attorney fulfilled his constitutional duty to consult with his client and to make a reasonable effort to determine Petitioner's wishes, and whether he acted in accordance with those wishes.

Id. at 792-93.

In effect, the Eleventh Circuit requires a petitioner to establish that he actually instructed his counsel to file an appeal.

The record supports that Pippin did indicate (by filing a pro se motion and request for appointment of appellate counsel), his desire to appeal his sentence and/or conviction. The affidavit filed by counsel Walter Northcutt, however, clearly states that while Pippin requested that a direct appeal be filed on his behalf, Pippin, on the two separate occasions he made the request to Northcutt, rescinded the requests after he and Northcutt discussed the matter. (Doc. 5, Affidavit of Attorney Walter Northcutt, at 3-5.)

Pippin's claim must fail as he presents no evidence that refutes Northcutt's sworn statement that Pippin rescinded his request for appeal on two separate occasions. Pippin's claim is groundless and should be dismissed.

## 2. Counsel provided ineffective assistance by failing to communicate and to explain process and procedure.

Pippin states that counsel was ineffective because he, "did not fully explain each action as it happened", would "wait until the last minute tell me to do this then he would change what he said", and "never tried to raise any issues for my defence (sic)".(Doc. 1 at paragraph 12(a).) The government construes this to mean that Pippin's counsel allegedly failed to inform Pippin of the nature of the charges, range of punishment, constitutional rights and the nature of the court proceedings. Pippin's claim must fail, however, as the record does not support his claim.

It is clear from the record that Pippin was apprised of the charges he faced, the possible penalties he faced, his constitutional rights, the impact of waiving those rights, and the nature of the court proceedings, prior to entry of his guilty plea.( See Exhibit C, Transcript of Change of Plea

Hearing, at 2-13.)

Additionally, the plea agreement sets out the counts and statutes charged, states the penalties upon conviction, and the elements necessary to establish each of the counts of conviction.( *See* B at 1-2.) Further, the parties discussed, at length, the charges, the elements of each charge, the penalties, statutory and pursuant to the United States Sentencing Guidelines, and the impact and effect of Pippin's prior criminal history. (*See* Doc. 5, at 1,2, and 4.)  This final issue should be dismissed as being without any merit.

**C.**    **Alternatively, Pippin's Ineffective Assistance Of Counsel Claim Should Be Rejected Because He Cannot Demonstrate Prejudice.**

As already noted, Pippin raises three claims of ineffective assistance of counsel.  Pippin is not entitled to relief on his claim because, even if he can demonstrate that his counsel's performance was deficient, he cannot prove prejudice.

Pippin, convicted of two prior felony sex convictions, faced a sentence of not less than 15 years, nor more than 40 years upon conviction of counts 1 and 2 of the indictment; not less than 10 years, nor more than 20 years upon conviction of count 3 of the indictment; and, not more than 10 years upon conviction of count 4 of the indictment. The advisory guideline range as determined by the Court at sentencing, based upon a total offense level of 37 and a criminal history category of I, set a recommended range of 210 to 262 months, or 17 years and 6 months to 21 years and 10 months. The plea agreement negotiated by the parties, stipulated that Pippin would receive a sentence of not more than 15 years upon conviction of count 1 and 2 of the indictment; not more than 10 years upon conviction of count 3 of the indictment; and, not more than 7 years upon conviction of count 4 of the indictment, with all sentences to run concurrent with each other. The Court accepted the plea agreement and sentenced Pippin to 15 years on counts 1 and 2, 10 years on count 3, and 7 years on

count 4, all counts run concurrent with each other. The Court downwardly varied from the advisory guideline calculation and justified said variance, pursuant to the factors set out in Title 18, United States Code, Section 3553(a). There is no indication in the record before this Court that but for counsel's actions, the result of Pippin's sentence would have been different.  As to each of his claims of ineffective assistance of counsel, Pippin has failed to plead facts sufficient to demonstrate that he was prejudiced by any of counsel's actions.  For that reason, his § 2255 motion should be summarily dismissed.

**D.**    **The District Court Did Not Violate Pippin's Rights By Refusing to Appoint Appellate Counsel.**

Pippin claims that the District Court violated his Constitutional rights by refusing to appoint appellate counsel. The record is clear that Pippin retained an attorney, Walter Northcutt. The record is equally clear that at no time did Pippin dismiss, or ask to have dismissed, Nortcutt as his counsel. It is equally clear from the record that Northcutt did not file a <u>Motion to Withdraw</u>, thus triggering the Court's ability to consider appointment of counsel. Additionally, as long as Pippin and/or Northcutt failed to request that Northcutt be removed as counsel, the district's Local Rule 83.1(e) would require continued representation.

Therefore, because the District Court did not violate Pippin's Constitutional rights, as Pippin was represented by a competent attorney throughout the proceedings before the Court, this claim should be dismissed as without merit.

### IV.  MISCELLANEOUS

All facts not specifically admitted by the Government in this response are denied.

Furthermore, all arguments made by the Government in this response are made in the alternative and should be considered separately and severally.

Also, should this Court determine that Pippin has made any pro se arguments not addressed in this response, the Government would request the opportunity to further respond to those arguments.

Finally, Pippin has not pleaded facts or presented sufficient evidence or argument demonstrating he is entitled to an evidentiary hearing, and his claims for relief should be denied without an evidentiary hearing. *See, Blacklidge v. Allison*, 431 U.S. 63, 73-74 (1977); *Tejada v. Dugger*, 941 U.S. 1551, 1559 (11th Cir. 1991); *United States v. Laetividal-Gonzalez*, 939 F. 2d 1455, 1465 (11th Cir. 1991).

## V. CONCLUSION

For the above reasons, Defendant/Movant Ernest Pippin has failed to demonstrate that he is entitled to any relief from this Court, and his § 2255 motion should be denied without an evidentiary hearing.

Respectfully submitted this 11th day of March, 2008.

LEURA G. CANARY
United States Attorney

/s/ Susan R. Redmond
SUSAN R. REDMOND
Assistant United States Attorney
Post Office Box 197
Montgomery, Alabama 36101-0197
(334) 223-7280
(334) 223-7135 fax
susan.redmond@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| **ERNEST PIPPIN,** | ) | |
| | ) | |
| **Defendant/Movant,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO. 3:07-CV-613-MHT** |
| | ) | **(CR-3:06-150-MHT)** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 11th day of March, 2008, I served a copy of the foregoing

response and exhibits on the pro se movant/defendant by mailing a copy of the same to him, United

States Mail, postage prepaid, at the following address:

> Ernest Pippin
> BOP Reg. No. 11970-002
> FMC - Ashland, Box 6001
> Ashland, KY 41105

Respectfully submitted,

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/ Susan R. Redmond
SUSAN R. REDMOND
Assistant United States Attorney
Post Office Box 197
Montgomery, Alabama 36101-0197
(334) 223-7280
(334) 223-7135 fax
susan.redmond@usdoj.gov

**FILED**

JUN 1 4 2006

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CR. NO. 3:06cr 150-mHT |
| v. | ) | [18 USC 2252A(a)(1); |
| | ) | 18 USC 2252A(a)(5)(B); |
| | ) | 18 USC 922(g)(1)] |
| ERNEST PIPPIN | ) | |
| | ) | |
| | ) | INDICTMENT |

The Grand Jury charges:

## COUNT 1

On or about February 25, 2003, within the Middle District of Alabama, defendnt

ERNEST PIPPIN,

did knowingly mail and transport and ship in interstate and foreign commerce by any means,

including by computer, any child pornography, in violation of Title 18, United States Code, Section

2252A(a)(1).

## COUNT 2

On or about March 21, 2003, within the Middle District of Alabama, defendant

ERNEST PIPPIN,

did knowingly mail and transport and ship in interstate and foreign commerce by any means,

including by computer, any child pornography, in violation of Title 18, United States Code, Section

2252A(a)(1).

## COUNT 3

On or about March 16, 2005, within the Middle District of Alabama, defendant

ERNEST PIPPIN,



A0986-C
GOVERNMENT
EXHIBIT

CASE
NO. 3:06cv613 #4

EXHIBIT
NO. A

did knowingly possess any book, magazine, periodical, film, videotape, computer disk, and any other material that contains, an image of child pornography that has been mailed, shipped, and transported in interstate, and foreign commerce by any means, including by computer, in violation of Title 18, United States Code, Section 2252A(a)(5)(B).

## COUNT 4

On or about March 16, 2005, within the Middle District of Alabama, defendant

### ERNEST PIPPIN,

having been previously convicted in a court, of crimes punishable by imprisonment for a term in excess of one year, to-wit: Sexual Abuse in the First Degree in the Circuit Court of Russell County, Alabama (CC 92-76 and 92-77), knowingly possessed firearms, in and affecting commerce, that is a Charter Arms, Undercover, .38 caliber revolver, serial number 542073; a Llama, .380 caliber semi-auto pistol, serial number A89106; an Excam, GT-27, .25 caliber semi-auto pistol, serial number M17052; a Chamri, 12 gauge shotgun, serial number 295778; a Stevens, Model 940, unknown caliber shotgun, serial number unknown; a Hercules, 410 gauge shotgun, serial number unknown; a Springfield Armory, Model 1903, serial number unknown, better descriptions of which are unknown to the Grand Jury, in violation of Title 18, United States Code, Section 922(g)(1).

## FORFEITURE ALLEGATION - 1

A.    Counts 1 through 3 of this indictment are hereby repeated and incorporated herein by reference.

B.    Upon conviction for the violations of Title 18, United States Code, Section 2252A, as alleged in Counts 1, 2, or 3 this Indictment, the defendant,

### ERNEST PIPPIN,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 2253:

2

(1)     any visual depiction described in Title 18, United States Code, Section 2252A, or any book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction, which was produced, transported, mailed, shipped or received in violation of such offenses;

(2)     any property, real or personal, constituting or traceable to gross profits or other proceeds obtained from such offense; and,

(3)     any property, real or personal, used and intended to be used to commit and to promote the commission of such offense

C.     If any of the property described in this forfeiture allegation, as a result of any act an omission of the defendant

(1)     cannot be located upon the exercise of due diligence;

(2)     has been transferred and sold to, and deposited with a third person;

(3)     has been placed beyond the jurisdiction of the court;

(4)     has been substantially diminished in value; or

(5)     has been commingled with other property which cannot be divided without difficulty; the United States, pursuant to Title 18, United States Code, Section 2253(o) intends to seek an order of this Court forfeiting any other property of said defendant up to the value of any property described in paragraph B above, all in violation of Title 18, United States Code, Section 2252A.

All in violation of Title 18, United States Code, Section 2253.

<u>FORFEITURE ALLEGATION - 2</u>

A.     Count 4 of this indictment is hereby repeated and incorporated herein by reference.

3

B.     Upon conviction for the violation of Title 18, United States Code, Section 922(g)(1), as alleged in Count 4 of this indictment, the defendant,

ERNEST PIPPIN,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924 and Title 28, United States Code, Section 2461(c), all firearms and ammunition involved in the commission of this offense, including but not limited to the following:

One Charter Arms, Undercover, .38 caliber revolver, bearing serial number 542073;

One Llama, .380 caliber semi-automatic pistol, bearing serial number A89106;

One Excam, GT-27, .25 caliber semi-automatic pistol, bearing serial number M17052;

One Chamri, 12 gauge shotgun, bearing serial number 295778;

One Stevens, Model 940, shotgun;

One Hercules, 410 gauge shotgun; and

One Springfield Armory, Model 1903.

C.     If any of the property described in this forfeiture allegation, as a result of any act or omission of the defendant:

(1)     cannot be located upon the exercise of due diligence;

(2)     has been transferred, sold to, or deposited with a third person;

(3)     has been placed beyond the jurisdiction of the court;

(4)     has been substantially diminished in value; or,

(5)     has been commingled with other property which cannot be divided without difficulty, the United States, pursuant to Title 21, United States Code, Section 853, as

4

incorporated by Title 28, United States Code, Section 2461(c), intends to seek an Order of this

Court forfeiting any other property of said defendant up to the value of the property described in

the above paragraphs.

All in violation of Title 18, United States Code, Section 922.

A TRUE BILL:

_Janice Davis Williams_
Foreperson

_Leura G. Canary_
LEURA G. CANARY
UNITED STATES ATTORNEY

_John T. Harmon_
John T. Harmon
Assistant United States Attorney

_Susan R. Redmond_
Susan R. Redmond
Assistant United States Attorney

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO.  3:06-CR-150-MHT |
| | ) | |
| ERNEST PIPPIN | ) | |

## PLEA AGREEMENT

DEFENSE COUNSEL:            WALTER NORTHCUTT

ASSISTANT U.S. ATTORNEY:        SUSAN R. REDMOND

### COUNTS AND STATUTES CHARGED:

Count 1.        18 U.S.C. § 2252A(a)(1)
                Distribution of child pornography

Count 2.        18 U.S.C. § 2252A(a)(1)
                Distribution of child pornography

Count 3.        18 U.S.C. § 2252A(a)(5)(B)
                Possession of child pornography

Count 4.        18 U.S.C. § 922(g)(1)
                Felon in possession of a firearm

### COUNTS PLEADING PURSUANT TO PLEA AGREEMENT:

Count 1.        18 U.S.C. § 2252A(a)(1)

Count 2.        18 U.S.C. § 2252A(a)(1)

Count 3.        18 U.S.C. § 2252A(a)(5)(B)

Count 4.        18 U.S.C. § 922(g)(1)

### PENALTIES BY COUNT – MAXIMUM PENALTY:

Count 1,2.        18 U.S.C. § 2252A(a)(1):
                NLT 15Y, NMT 40Y;

AO890-C
GOVERNMENT
EXHIBIT

CASE
NO. 3:07cv 613-MHT

EXHIBIT
NO.    B

NMT $250,000; both
NMT LIFE SUP REL;
$100 AF;
VWPA.

Count 3.        <u>18 U.S.C. § 2252A(a)(5)(B):</u>
NLT 10Y, NMT 20Y;
NMT $250,000; both
NMT LIFE SUP REL;
$100 AF;
VWPA

Count 4.        <u>18 U.S.C. § 922(g)(1)</u>
NMT 10Y;
NMT $250,000 or both;
NMT 3Y SUP REL;
$100 AF;
VWPA.

## **ELEMENTS OF THE OFFENSE:**

<u>18 U.S.C. § 2252A(a)(1):</u>
1.     The defendant knowingly mails, transports or ships child pornography by any means, including by computer; and

2.     That the child pornography is mailed. Transported or shipped in interstate or foreign commerce.

<u>18 U.S.C. § 2252A(a)(5)(B):</u>
1.     The defendant knowingly possessed videotape, computer disk or other      material that contained an image of child pornography; and

2.     That the material had been mailed, shipped or transported in interstate or foreign commerce; and

3.     That at the time of such receipt the defendant believed that such items constituted or contained child pornography.

<u>18 U.S.C. § 922(g)(1):</u>
1. The defendant knowingly and intentionally possessed a firearm or ammunition; and

2. The defendant has been previously convicted in a court of a crime punishable by imprisonment for a term in excess of one year, a felony.
*****************************************************************

2

Susan R. Redmond, Assistant United States Attorney and Walter Northcutt, attorney for the defendant, pursuant to Rule 11(c)(1)(C), Federal Rules of Criminal Procedure, as Amended, have, with the authorization of the undersigned defendant, heretofore entered into discussions with a view towards reaching a pretrial conclusion of the charges pending in the Indictment, and a Plea Agreement has been reached by said parties. The plea is being submitted to the Court pursuant to Federal Rules of Criminal Procedure 11(c)(1)(C), and the parties understand that, if the terms of the Plea Agreement are not accepted by the Court, the defendant will be allowed to withdraw the defendant's plea of guilty and proceed to trial. If the Court accepts this agreement, however and defendant thereafter breaches this agreement, his guilty plea may not be withdrawn.

## GOVERNMENT'S PROVISIONS

1. Upon entering a plea of guilty by the defendant to the offense charged in Counts 1, 2, 3, and 4 of the Indictment, the attorney for the government will do the following:

a. The government will agree, that a 2-level reduction in the applicable offense level pursuant to U.S.S.G. § 3E1.1(a) for the defendant's acceptance of responsibility is appropriate, so long as the defendant does not obstruct justice or otherwise fail to accept responsibility for the offense conduct. Should the Government find the defendant assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and this Court to allocate their resources efficiently, the Government will move at sentencing for a further reduction of one level, pursuant to U.S.S.G. § 3E1.1(b). Determination of whether the defendant's obligations to qualify for the reduction pursuant to U.S.S.G. § 3E1.1 is at the sole discretion of the United States.

3

b. The government will agree to recommend a sentence of not more than 15 years on Counts 1 and 2, not more than 10 years on Count 3, and not more than 7 years on Count 4, all to run concurrent with each other.

2.    The United States reserves the right to inform the Court and the Probation Department of all facts pertinent to the sentencing process, including all relevant information concerning the offenses and the defendant's background.

## DEFENDANT'S PROVISIONS

3.    The defendant agrees to the following:

a. To plead guilty to Counts 1, 2, 3 and 4 of the Indictment.

b. To stipulate that he has two prior convictions for Sexual Abuse First Degree.

c. To a sentence of not less than 11 years.

d. To stipulate to the forfeiture of the firearms listed in Count 4 of the Indictment and any ammunition seized by the government.

e. To a term of Supervised Release of LIFE.

## FACTUAL BASIS

The defendant admits the allegations charged in Count 1 of the Indictment and understands that the nature of the charge to which the plea is offered involves proof as to Count 1, that on or about February 25, 2003 the defendant, within the Middle District of Alabama, did knowingly mail and transport and ship in interstate and foreign commerce by any means, including by computer, any child pornography, in violation of Title 18, United States Code, Section 2252A(a)(1).

The defendant admits the allegations charged in Count 2 of the Indictment and understands that the nature of the charge to which the plea is offered involves proof as to Count 2, that on or

4

about March 21, 2003 the defendant, within the Middle District of Alabama, did knowingly mail

and transport and ship in interstate and foreign commerce by any means, including by computer, any

child pornography, in violation of Title 18, United States Code, Section 2252A(a)(1).

The defendant admits the allegations charged in Count 3 of the Indictment and understands

that the nature of the charge to which the plea is offered involves proof as to Count 3, that on or

about March 16, 2005 the defendant, within the Middle District of Alabama, knowingly possessed

computer disks, digital electronic storage media, and other materials that contained more than 600

images of child pornography, including images of prepubescent minors and minors identified as

being under the age of 12 years, and images that portray sadistic and masochistic conduct and other

depictions of violence, that had been shipped, mailed and transported in interstate and foreign

commerce by computer, in violation of Title 18 United States Code, Section 2252A(a)(5)(B).

The defendant admits the allegations charged in Count 4 of the Indictment and understands

that the nature of the charge to which the plea is offered involves proof as to Count 4, that on or

about March 16, 2005 the defendant, within the Middle District of Alabama, having been previously

convicted in a court, of crimes punishable by imprisonment for a term in excess of one year, to-wit:

Sexual Abuse in the First Degree in the Circuit Court of Russell County, Alabama (CC 92-76 and

92-77), knowingly possessed firearms, in and affecting commerce, that is a Charter Arms,

Undercover, .38 caliber revolver, serial number 542073; a Llama, .380 caliber semi-auto pistol,

serial number A89106; an Excam, GT-27, .25 caliber semi-auto pistol, serial number M17052; a

Chamri, 12 gauge shotgun, serial number 295778; a Stevens, Model 940, unknown caliber shotgun,

serial number unknown; a Hercules, 410 gauge shotgun, serial number unknown; a Springfield

Armory, Model 1903, serial number unknown, better descriptions of which are unknown to the

Grand Jury, in violation of Title 18, United States Code, Section 922(g)(1).

## DEFENDANT'S WAIVER OF APPEAL AND COLLATERAL ATTACK

b.  Understanding that 18 U.S.C. § 3742 provides for appeal by a defendant of the sentence under certain circumstances, the defendant expressly waives any and all rights conferred by 18 U.S.C. § 3742 to appeal the sentence.  Defendant further expressly waives the right to appeal the conviction and sentence on any other ground, including an upward departure or variance, and waives the right to attack the conviction and sentence in any post-conviction proceeding.  This waiver does not include the right to appeal on the ground of ineffective assistance of counsel or prosecutorial misconduct.

In return for the above waiver by the defendant, the Government does not waive its right to appeal the sentence imposed in the instant case.  The Government does not waive its right to appeal any order dismissing the Indictment, vacating a sentence, or otherwise terminating the prosecution at any stage of the proceedings.  Further, the parties agree that nothing in this agreement shall affect the Government's right and/or duty to appeal as set forth in 18 U.S.C. § 3742(b).  However, if the United States appeals the defendant's sentence pursuant to 18 U.S.C. § 3742(b), the defendant is released from this waiver.

## DEFENDANT'S UNDERSTANDING AND ACKNOWLEDGMENT

4.   The defendant, before entering a plea of guilty to Counts 1, 2, 3 and 4 of the Indictment as provided for herein by said Plea Agreement, advises the Court that:

a. The discussions between the attorney for the government and the attorney for the defendant towards reaching an agreed plea in this case have taken place with the defendant's authorization and consent.

b. Defendant acknowledges that a breach of this federal plea agreement, to include committing another federal, state, or local offense prior to sentencing on the pending charge, will not entitle him to withdraw his guilty plea in this case. Defendant understands and acknowledges that defendant's guilty plea will remain in full force and effect upon any breach of this agreement by the defendant. Defendant further understands that should he breach this agreement, this agreement will be null and void and he will be prosecuted for all offenses of which the government has knowledge. The parties agree that the Government will be the sole authority to decide whether Defendant has breached this Agreement.

c. The defendant further understands that, pursuant to Title 18, United States Code, Section 3013, said $400.00 assessment fee is to be paid by the defendant on the date of sentencing. The defendant will make an honest, good faith effort to pay said fine as directed by the Financial Litigation Section of the United States Attorney's Office. The defendant further understands that by completing the financial statement, the defendant is representing that it is true and accurate to the best of the defendant's information, knowledge, and belief.

d. The defendant understands that the defendant has a right to be represented by an attorney at every stage of the proceedings against the defendant herein and is represented by the defendant's undersigned attorneys.

e. The defendant understands that the defendant has the right to plead not guilty and has the right to be tried by a jury and, at a trial thereof, has the right to the assistance of counsel, the right to confront and cross-examine witnesses against the defendant, the right to call witnesses in the defendant's own behalf, and the right not to be compelled to incriminate the defendant, and that if the defendant enters a plea of guilty herein, there will not be a further trial of any kind and that by

7

the entry of such a plea, the defendant waives the right to a trial by jury or to a trial before the Court.

f.  The defendant further understands that in entering a plea of guilty herein, the Court may ask questions about the offense to which the plea is entered and further understands that if the defendant answers these questions under oath, on the record, and in the presence of counsel, which questions and answers would be recorded, that the answers may later be used against the defendant in a prosecution for perjury or false statement if the answers are not truthful.

g.  The defendant further understands and advises the Court that the Plea Agreement as set forth herein and the plea to be entered by the defendant as a result thereof is voluntary on the defendant's part and is not the result of any force or threats or of any promises apart from the aforesaid Plea Agreement. The defendant further advises the Court that the Plea Agreement set forth herein is the result of prior discussions between the attorney for the government, the attorney for the State and the attorneys for the defendant, all conducted with the defendant's authorization, knowledge, and consent.

h.  The defendant further advises the Court that the defendant's understanding of this Plea Agreement is as set forth in this document.

i.  The defendant further advises the Court that it is understood that the government can only make a recommendation which is not binding on their respective Courts.

j.  The defendant further advises the Court that the defendant understands and has been advised that evidence of a plea of guilty, later withdrawn or an offer to plead guilty to the crimes charged in the Indictment herein, or of statements made in connection with and relevant to said plea or offer to plead, shall not be admissible in any civil or criminal proceedings against the defendant. However, the defendant does understand that evidence of a statement made in connection with and

8

relevant to a plea of guilty, later withdrawn, or an offer to plead guilty to the crimes charged in the Indictment herein, is admissible in a criminal proceeding for perjury or false statement when the statement was made by the defendant under oath, on the court record, and in the presence of counsel.

k. The defendant is satisfied that defense counsel has been competent and effective in representing defendant.

5. The undersigned attorneys for the government and for the defendant represent to the court that the foregoing Plea Agreement is the agreement of the parties that has been reached pursuant to the Plea Agreement procedure provided for in Rule 11, Federal Rules of Criminal Procedure, as Amended. The attorney for the defendant further advises the Court that the defendant has been advised of the nature of the charges to which the foregoing described plea is to be offered, and that the defendant has been advised of the defendant's right to plead not guilty and to be tried by a jury on all issues herein; of the maximum possible penalty provided by law; that by the entering of a plea of guilty as aforesaid, the defendant waives the right to be tried by a jury or by the Court, waives the right to confront and cross-examine witnesses against the defendant and the right not to be compelled to incriminate the defendant; and that if the defendant pleads guilty, there will not be a further trial of any kind. Further, the defendant has been advised that if the defendant pleads guilty, the Court may ask questions about the offense to which the defendant has pleaded and that if the plea is rejected or later withdrawn, that the answers to such questions may not be used against the defendant in a civil or criminal proceeding, but that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement if the answers are not truthful.

6. The defendant understands that the United States Probation Office will prepare a presentence investigation report for the Court. The Probation Officer will consider the defendant's

9

conduct related to the offense to which the plea is offered, as well as the defendant's criminal history.

The offense level or criminal history category, as calculated by the Probation Officer and determined

by the court, may differ from that projected by defendant's counsel or the United States Attorney.

This ___3rd___ day of August, 2006.

Respectfully submitted,

LEURA GARRETT CANARY
UNITED STATES ATTORNEY

Louis V. Franklin
Chief - Criminal Division
U.S. Attorney's Office
One Court Square, Suite 201
Montgomery, Alabama 36104

Susan R. Redmond
Assistant U.S. Attorney

10

I have read the foregoing Plea Agreement, understand the same, and the matters and facts set forth therein accurately and correctly state the representations that have been made to me and accurately set forth the conditions of the Plea Agreement that has been reached.

IN ADDITION TO THE FOREGOING PROVISIONS TO WHICH I AGREE, I SWEAR UNDER PENALTY OF PERJURY THAT THE FACTS IN THE "FACTUAL BASIS" PARAGRAPH ABOVE ARE TRUE AND CORRECT AND THAT I AM SATISFIED THAT I HAVE RECEIVED COMPETENT ADVICE AND REPRESENTATION FROM MY DEFENSE COUNSEL, WALTER NORTHCUTT.

Ernest Pippin
Defendant

8-3-06
Date

Walter Northcutt
Attorney for Defendant

8-3-06
Date

11

1              IN THE UNITED STATES DISTRICT COURT

2            FOR THE MIDDLE DISTRICT OF ALABAMA

3                       EASTERN DIVISION

4

5   UNITED STATES OF AMERICA

6        vs.                    CASE NO.:  3:06cr150-MHT

7   ERNEST PIPPIN

8

9

10

11              *  *  *  *  *  *  *  *  *  *  *

12                 CHANGE OF PLEA HEARING

13              *  *  *  *  *  *  *  *  *  *  *

14          Before the Honorable Susan Russ Walker,

15            United States Magistrate Judge, at

16          Montgomery, Alabama, on August 3, 2006

17              *  *  *  *  *  *  *  *  *  *  *

18  APPEARANCES:

19  FOR THE GOVERNMENT: Susan R. Redmond
                        Assistant United States Attorney
20

21  FOR THE DEFENDANT:  Mr. Walter M. Northcutt
                        Attorney at Law
22

23

24

25

AO88-C
**GOVERNMENT
EXHIBIT**

CASE
NO. 3:06cv613-MHT

EXHIBIT
NO.  C

**2**

1    (The above case coming on for hearing at Montgomery,
2    Alabama, on August 3, 2006, before the Honorable Susan Russ
3    Walker, United States Magistrate Judge, the following
4    proceedings were had commencing at 12:45 p.m.:)
5        THE COURT:  This is United States versus Ernest
6    Pippin.  This is 3:06cr150.  We're here for a change of plea.
7        Previously, the Court was informed that the defendant
8    wishes to change his plea and consents to having the guilty plea
9    proceedings conducted by a United States magistrate judge.  I am
10   a United States magistrate judge.  The next higher ranking judge
11   is a district judge, and you have the right to have a district
12   judge take your plea.  If you wish to have me take your plea
13   today, you need to read and sign the consent form that's been
14   provided to you.
15       (Mr. Northcutt and the defendant comply)
16       THE COURT:  All right.  This waiver has been signed.
17   Would counsel briefly summarize the terms of the plea agreement.
18       MS. REDMOND:  Judge, the agreement reached between the
19   parties is pursuant to Federal Rule of Criminal Procedure
20   11(c)(1)(C).  The terms of the agreement are, government's
21   provisions, that the defendant will receive a three-level
22   downward departure or three-level reduction for acceptance of
23   responsibility; that he -- that the government will agree to
24   recommend a sentence of not more than 15 years on counts one and
25   two, not more than ten years on count three, and not more than

**3**

1    seven years on count four, all counts to run and sentences to
2    run concurrent with each other.  We retain and reserve the right
3    to inform the Court and probation of all facts pertinent to the
4    sentencing process.
5        The defendant's provisions are to plead guilty to all
6    counts of the indictment, to stipulate to two prior convictions
7    for sexual abuse first degree, to a sentence of not less than 11
8    years and to the forfeiture of the firearms listed in count four
9    of the indictment, finally, to a term of supervised release of
10   life.  He further, Judge, waives appeal and collateral attack.
11   And I believe those are the provisions of the plea agreement.
12       THE COURT:  Anything else?
13       MR. NORTHCUTT:  No, ma'am.
14       THE COURT:  All right.  We will swear in the defendant.
15       THE CLERK:  If you'd raise your right hand.
16       Do you solemnly swear or affirm that the testimony you
17   give in this cause will be the truth, the whole truth, and
18   nothing but the truth, so help you God?
19       THE DEFENDANT:  I do.
20       THE COURT:  Mr. Pippin, do understand that you are now
21   under oath and that if you answer any of the questions asked
22   here falsely, your answers may later be used against you in
23   another prosecution for perjury or making a false statement?
24       THE DEFENDANT:  Yes, ma'am.
25       THE COURT:  All right.  What is your full name, please?

**4**

1        THE DEFENDANT:  Ernest Eugene Pippin.
2        THE COURT:  How old are you?
3        THE DEFENDANT:  I'm 57.
4        THE COURT:  How far did you go in school?
5        THE DEFENDANT:  I went to the -- through the eleventh
6    grade.
7        THE COURT:  Have you been treated recently for any
8    mental illness or addiction to narcotic drugs of any kind?
9        THE DEFENDANT:  No, ma'am.
10       THE COURT:  Are you currently under the influence of
11   any drug, medication, or alcoholic beverage of any kind?
12       THE DEFENDANT:  No, ma'am.
13       THE COURT:  Have you received a copy of the indictment
14   pending against you; that is, the written charges made against
15   you in this case?
16       THE DEFENDANT:  Yes, ma'am.
17       THE COURT:  Have you fully discussed those charges and
18   the case in general with Mr. Northcutt as your counsel?
19       THE DEFENDANT:  Yes, ma'am.
20       THE COURT:  Are you fully satisfied with the counsel,
21   representation, and advice given to you in this case by your
22   attorney, Mr. Northcutt?
23       THE DEFENDANT:  Yes, ma'am.
24       THE COURT:  There is a written plea agreement in this
25   case.  Did you have the opportunity to read and discuss the plea

**5**

1    agreement with your lawyer before you signed it?
2        THE DEFENDANT:  Yes, ma'am.
3        THE COURT:  Does the plea agreement represent in its
4    entirety any understanding that you have with the government?
5    In other words, is all of your agreement written down in that
6    written plea agreement?
7        THE DEFENDANT:  Yes, ma'am.
8        THE COURT:  Do you understand the terms of the plea
9    agreement?
10       THE DEFENDANT:  Yes, ma'am.
11       THE COURT:  Has anyone made any other or different
12   promise or assurance of any kind to you in an effort to induce
13   you to plead guilty in this case?
14       THE DEFENDANT:  Not that I'm aware of.
15       THE COURT:  Do you understand that if the court chooses
16   not to follow the terms of the plea agreement, the judge will
17   give you the opportunity to withdraw your plea of guilty and
18   that if you choose not to withdraw your plea, he may impose a
19   more severe sentence without being bound by the plea agreement?
20       THE DEFENDANT:  Yes, ma'am.
21       THE COURT:  Has anyone attempted in any way to force
22   you to plead guilty in this case?
23       THE DEFENDANT:  No, ma'am.
24       THE COURT:  Are you pleading guilty of your own free
25   will because you are guilty?

**6**

1    THE DEFENDANT: Yes, ma'am.

2    THE COURT: Do you understand that the offenses to

3  which you are pleading guilty are felony offenses; that if your

4  plea is accepted, you will be adjudged guilty of those offenses;

5  and that such adjudication may deprive you of valuable civil

6  rights, such as the right to vote, the right to hold public

7  office, the right to serve on a jury, and the right to possess

8  any kind of firearm?

9    THE DEFENDANT: Yes, ma'am.

10    THE COURT: The maximum penalty provided by law in this

11  case is as follows. For counts -- for each of counts one and

12  two, no more than $250,000 fine, no less than 15 years' and no

13  more than 40 years' imprisonment, or both the fine and the

14  imprisonment; no more than life supervised release; a $100

15  assessment fee; and you may be asked to make restitution to any

16  victim of the offense.

17    For count three, the maximum punishment is no more than

18  $250,000 fine, no less than ten years' and no more than 20

19  years' imprisonment, or both the fine and the imprisonment; no

20  more than life supervised release; a $100 assessment fee; and

21  you may be asked to make restitution.

22    And finally, for count four, the maximum punishment is

23  no more than $250,000 fine, no more than ten years'

24  imprisonment, or both the fine and the imprisonment; no more

25  than three years' supervised release; a $100 assessment fee; and

**7**

1  again, you may be asked to make restitution to any victim of the

2  offense.

3    Do you understand the maximum punishment in your case?

4    THE DEFENDANT: Yes, ma'am.

5    THE COURT: Do you understand that if you violate the

6  conditions of supervised release, you can be given additional

7  time in prison?

8    THE DEFENDANT: Yes, ma'am.

9    THE COURT: Do you understand that you must pay a

10  special assessment fee of $100 for each count?

11    THE COURT: Do you understand that under the Sentencing

12  THE COURT: Do you understand that under the Sentencing

13  Reform Act of 1984, the United States Sentencing Commission has

14  issued guidelines for judges to follow in determining the

15  sentence in a criminal case?

16    THE DEFENDANT: I mean I don't understand what you're

17  saying.

18    THE COURT: All right. Let me let you talk with your

19  counsel for a moment.

20    (Brief pause)

21    THE DEFENDANT: Okay. Yes, ma'am.

22    THE COURT: All right. Do you recall now what I'm

23  talking about?

24    THE DEFENDANT: Yes, ma'am.

25    THE COURT: Okay. And do you understand that under

**8**

1  recent Supreme Court cases, those sentencing guidelines are now

2  considered to be advisory sentencing guidelines? Do you

3  understand that?

4    THE DEFENDANT: Yes, ma'am.

5    THE COURT: Have you and your attorney talked about how

6  the advisory sentencing guidelines might apply to your case?

7    THE DEFENDANT: Yes, ma'am.

8    THE COURT: Do you understand that parole has been

9  abolished and that if you are sentenced to prison, you will not

10  be released on parole?

11    THE DEFENDANT: Yes, ma'am.

12    THE COURT: Do you understand that under some

13  circumstances you or the government may have the right to appeal

14  any sentence that the court imposes?

15    THE DEFENDANT: Yes, ma'am.

16    THE COURT: And do you understand that by entering into

17  this plea agreement and entering a plea of guilty, you will have

18  waived, or given up, your right to appeal or to collaterally

19  attack all or part of this sentence?

20    THE DEFENDANT: Yes, ma'am.

21    THE COURT: If you're not sure, do you want to talk

22  with your counsel for a moment? You appeared to me to be a

23  little bit unsure.

24    (Brief pause)

25    THE DEFENDANT: Yes, ma'am.

**9**

1    THE COURT: All right. Now, you've spoken to your

2  counsel. Do you understand what I was asking?

3    THE DEFENDANT: Yes, ma'am.

4    THE COURT: All right. I'm going to ask you one more

5  time. Do you understand that by entering into this plea

6  agreement and entering a plea of guilty, you will have waived,

7  or given up, your right to appeal or to collaterally attack all

8  or part of this sentence?

9    THE DEFENDANT: Yes, ma'am.

10    THE COURT: Do you understand that you have the right

11  to plead not guilty to any offense charged against you and to

12  persist in that plea; that you would then have the right to a

13  trial by jury; that at trial, you would be presumed to be

14  innocent and the government would have to prove your guilt

15  beyond a reasonable doubt?

16    THE DEFENDANT: Yes, ma'am.

17    THE COURT: Do you understand that you would have the

18  right to the assistance of counsel for your defense, the right

19  to see and hear all the witnesses and have them cross-examined

20  in your defense, the right on your own part to decline to

21  testify unless you voluntarily elected to do so in your own

22  defense, and the right to the issuance of subpoenas or

23  compulsory process to compel the attendance of witnesses to

24  testify in your defense?

25    THE DEFENDANT: Yes, ma'am.

10

1   THE COURT: Do you understand that should you decide
2   not to testify or put on any evidence, these facts cannot be
3   used against you?
4       THE DEFENDANT: Yes, ma'am.
5       THE COURT: Do you further understand that by entering
6   a plea of guilty, if that plea is accepted by the district
7   judge, there will be no trial and you will have waived, or given
8   up, your right to a trial as well as those other rights
9   associated with a trial as I just described them?
10      THE DEFENDANT: Yes, ma'am.
11      THE COURT: The charges to which you are pleading
12  guilty are set out in counts one through four of the
13  indictment. Count one charges that on or about February 25th,
14  2003, within the Middle District of Alabama, that you knowingly
15  mailed and transported and shipped in interstate and foreign
16  commerce by any means, including by computer, child pornography
17  in violation of 18 U.S.C., Section 2252A(a)(1).
18      Count two charges that on or about March 21st, 2003,
19  within the Middle District of Alabama, that you knowingly mailed
20  and transported and shipped in interstate and foreign commerce
21  by any means, including by computer, child pornography in
22  violation of 18 U.S.C., Section 2252A(a)(1).
23      Count three charges that on or about March 16th, 2005,
24  within the Middle District of Alabama, that you knowingly
25  possessed any book, magazine, periodical, film, videotape,

11

1   computer disk, or other material that contained an image of
2   child pornography that had been mailed, shipped, and transported
3   in interstate and foreign commerce by any means, including by
4   computer, in violation of 18 U.S.C., Section 2252A(a)(5)(B).
5       And finally, count four charges that on or about March
6   16th, 2005, within the Middle District of Alabama, that you,
7   having been previously convicted in a court of crimes punishable
8   by imprisonment for a term in excess of one year, knowingly
9   possessed firearms in and affecting commerce. The specific
10  felony conviction was sexual abuse in the first degree in the
11  Circuit Court of Russell County, Alabama. And the firearms were
12  a Charter Arms Undercover .38-caliber revolver; a Llama
13  .380-caliber semiautomatic pistol; an Excam GT-27 .25-caliber
14  semiautomatic pistol; a Chamri 12-gauge shotgun, serial number
15  295778; a Stevens Model 940 unknown caliber shotgun; a Hercules
16  .410-gauge shotgun; a Springfield Armory Model 1903 shotgun. I
17  believe that's a shotgun. Is it? It doesn't tell me there.
18      MS. REDMOND: Judge, I actually think that Springfield
19  Armory is a --
20      THE COURT: Handgun?
21      MS. REDMOND: -- shotgun or rifle.
22      THE COURT: Okay. As described in the indictment. And
23  I have not referenced every serial number, but that is the
24  charge against you in count five, and that this was in violation
25  of 18 U.S.C., Section 922(g)(1). Do you understand that charge?

12

1   And that's, I'm sorry, not count five, but count four.
2       THE DEFENDANT: Yes, ma'am.
3       THE COURT: The elements of these offenses which the
4   government would have to prove in your case beyond a reasonable
5   doubt are, for the 18 U.S.C. 2252A(a)(1) charges, that you
6   knowingly mailed, transported, or shipped child pornography by
7   any means, including by computer, and second, that the -- I'm
8   not sure this is right.
9       MS. REDMOND: I apologize. There's a period there
10  where there shouldn't be. That the child pornography was
11  mailed, transported, or shipped in interstate or foreign
12  commerce.
13      THE COURT: All right. Why is that not the same as
14  number one? Okay. I'm sorry. That adds the interstate
15  commerce clause.
16      MS. REDMOND: Yes, Your Honor.
17      THE COURT: All right. Going back, then, to the second
18  element for the 2252A(a)(1) charge; that is, that the child
19  pornography was mailed, transported, or shipped in interstate or
20  foreign commerce. Do you understand the elements of that
21  offense?
22      THE DEFENDANT: Yes, ma'am.
23      THE COURT: For 18 U.S.C., Section 2252A(a)(5)(B), the
24  elements are, first, that you knowingly possessed a videotape,
25  computer disk, or other material that contained an image of

13

1   child pornography; second, that the material had been mailed,
2   shipped, or transported in interstate or foreign commerce; and
3   third, that at the time of such receipt, you believed that the
4   items constituted or contained child pornography.
5       For 18 U.S.C., Section 922(g)(1), the elements are,
6   first, that you knowingly and intentionally possessed a firearm
7   or ammunition; and second, that you had been previously
8   convicted in a court of a crime punishable by imprisonment for a
9   term in excess of one year; that is, a felony.
10      Do you understand the elements for these charges?
11      THE DEFENDANT: Yes, ma'am.
12      THE COURT: I need to find whether or not there is a
13  factual basis for the plea. How would you like to proceed?
14      MS. REDMOND: Judge, I will aid the Court.
15      THE COURT: Thank you.
16      MS. REDMOND: Mr. Pippin, I'm going to ask you some
17  questions and ask you to answer directly into your microphone,
18  okay?
19      THE DEFENDANT: Okay.
20      MS. REDMOND: In 1992, were you convicted of the -- of
21  two felony offenses involving sexual abuse in the first degree?
22      THE DEFENDANT: Yes, ma'am.
23      MS. REDMOND: Okay. And was that in Russell County?
24      THE DEFENDANT: Yes, ma'am.
25      MS. REDMOND: Okay. And in February -- specifically,

14

1  February 25th, 2003 -- were you living in Lee County, Alabama?
2        THE DEFENDANT: Yes, ma'am.
3        MS. REDMOND: And would you stipulate or agree that Lee
4  County, Alabama, is within the Middle District of Alabama, in
5  the jurisdiction of this Court?
6        THE DEFENDANT: Yes, ma'am, I guess.
7        MS. REDMOND: And --
8        THE COURT: Let me just stop you. Since you said you
9  guess, do you know that it is?
10       THE DEFENDANT: Yes, ma'am.
11       THE COURT: So you agree that that's the case.
12       THE DEFENDANT: Yes, ma'am.
13       THE COURT: All right.
14       MS. REDMOND: And were you living at a residence, 775
15  Lee Road?
16       THE DEFENDANT: Yes, ma'am.
17       MS. REDMOND: That was your residence?
18       THE DEFENDANT: Well, you didn't finish the residence.
19       MS. REDMOND: Okay. Is it 775 Lee Road 346?
20       THE DEFENDANT: Yes, ma'am.
21       MS. REDMOND: All right. And do you have a computer in
22  that home?
23       THE DEFENDANT: No, not no more, ma'am.
24       MS. REDMOND: No, sir. I'm sorry. Let me -- let me go
25  back. February 25th of 2003.

15

1        THE DEFENDANT: Yes, ma'am.
2        MS. REDMOND: And did that computer have an Internet
3  connection or were you able to use that computer to access the
4  Internet?
5        THE DEFENDANT: Yes, ma'am.
6        MS. REDMOND: And did you, in fact, on February 25th,
7  2003, knowingly distribute or upload child pornography to the
8  Internet?
9        THE DEFENDANT: Yes, ma'am.
10       MS. REDMOND: And on March 21st, 2003, did you use
11  that -- excuse me -- your home computer again to distribute
12  child pornography or upload child pornography to the Internet?
13       THE DEFENDANT: Yes, ma'am.
14       MS. REDMOND: And on March 16th, 2005, were you aware
15  that law enforcement came to your residence in Lee County?
16       THE DEFENDANT: If that was the day that they came out,
17  yes, ma'am.
18       MS. REDMOND: All right. And on the day that they came
19  out, did you, in fact, have in your possession firearms, and
20  specifically the firearms that the Court read into the record
21  and that are -- make up count four of the indictment?
22       THE DEFENDANT: They were in my residence.
23       MS. REDMOND: Were they your guns?
24       THE DEFENDANT: The shotguns were four loans from my
25  father. They were up under the bed.

16

1        MS. REDMOND: Let me ask this -- let me ask it this
2  way. On March 16th, 2005, when the officers came to that
3  residence, the guns were located there; is that correct?
4        THE DEFENDANT: Yes, ma'am.
5        MS. REDMOND: And were those your guns, or did you have
6  the ability to possess those guns?
7        THE DEFENDANT: Yes, ma'am.
8        MS. REDMOND: And also on that day that they came, did
9  you have a working computer on that day?
10       THE DEFENDANT: Yes, ma'am.
11       MS. REDMOND: And did it have on that day Internet
12  capabilities?
13       THE DEFENDANT: Yes, ma'am.
14       MS. REDMOND: Okay. And on that computer, had you --
15  did you have stored on that computer or on electrical computer
16  components attached to that computer images of child
17  pornography?
18       THE DEFENDANT: Yes, ma'am.
19       MS. REDMOND: Okay. And in the plea agreement that you
20  signed -- let me go back. Did you knowingly have those images
21  of child pornography on your computer?
22       THE DEFENDANT: Yes, ma'am.
23       MS. REDMOND: Okay. And you knew that it was, in fact,
24  child pornography?
25       THE DEFENDANT: Yes, ma'am.

17

1        MS. REDMOND: Would you agree that those -- that the
2  images on your computer were more -- it was more than 600 images
3  of child pornography?
4        THE DEFENDANT: I'm not sure of that number. I mean it
5  was -- there was a lot of other images on there other than child
6  pornography.
7        MS. REDMOND: Okay. And what I'm specifically asking
8  is do you know how many images of child pornography you had
9  stored on that computer?
10       THE DEFENDANT: No, ma'am.
11       MS. REDMOND: Let me ask this. Are you aware or is it
12  your belief that anybody else had that child pornography on that
13  computer except you?
14       THE DEFENDANT: No, ma'am.
15       MS. REDMOND: You were the only one who had the child
16  pornography on the computer?
17       THE DEFENDANT: Yes, ma'am.
18       MS. REDMOND: Okay. And -- Judge, if I may have just
19  one moment.
20       THE COURT: You may.
21       (Off-the-record discussion)
22       MR. NORTHCUTT: Judge, we've reached a stipulation as
23  to the number. There were at least 600. I read the forensic
24  report, and she is correct.
25       THE COURT: All right.

18

1    MS. REDMOND: And Judge, just to be clear, the plea
2  agreement contains information that the child pornography
3  totaled more than 600 images of child pornography. Would you
4  stipulate to that?
5    MR. NORTHCUTT: Yes, ma'am.
6    MS. REDMOND: Would you stipulate as well that among
7  those more than 600 images of child pornography were images of
8  children under the age of 12 engaged in sexual conduct?
9    MR. NORTHCUTT: Yes, ma'am.
10    MS. REDMOND: And would you stipulate that those -- that of
11  those more than 600 images, that some of those images portrayed
12  sadistic and masochistic conduct and other depictions of
13  violence?
14    THE DEFENDANT: Yes, ma'am.
15    THE COURT: Let me just stop before you go on there.
16    MS. REDMOND: Yes, ma'am.
17    THE COURT: Your counsel has just stipulated to a
18  couple of things for you. Do you agree with what he has
19  stipulated to?
20    THE DEFENDANT: I'm -- I don't have -- I don't know. I
21  don't know what I'm --
22    MR. NORTHCUTT: Judge, I think his problem is he
23  doesn't know the exact number, and my information came from the
24  forensic reports. So he doesn't know the exact number that she
25  was calling out. I had access to those, but he hasn't reviewed

19

1  those forensic reports.
2    THE COURT: All right. Let me just ask this. Is the
3  number necessary for this plea, or is it necessary for
4  sentencing purposes?
5    MS. REDMOND: It's necessary for sentencing purposes,
6  Judge, but for the purposes of this hearing it is what is
7  contained within the plea agreement. So I wanted to make it as
8  clean a record as possible as to what he's pleading guilty to.
9    THE COURT: Your lawyer apparently has reviewed some
10  forensic reports. Do you want to talk with him about those?
11    THE DEFENDANT: Not really.
12    THE COURT: Well, I don't want to proceed with him
13  agreeing and your not agreeing.
14    THE DEFENDANT: I'll agree. I'll agree.
15    THE COURT: Well, I'm not trying to make you agree
16  either. I want to give you the opportunity to take whatever
17  position you think is correct. I'm not here to force you to do
18  anything, but I certainly give you the opportunity to talk
19  with your counsel if you wish.
20    THE DEFENDANT: I don't wish to. I'll just -- we'll
21  just go on. I'll say yes to all of it.
22    THE COURT: Well, again, that's not sufficient for the
23  Court's purpose.
24    THE DEFENDANT: Well, there's no way for me to know how
25  many images was on there. I've never counted them.

20

1    THE COURT: Okay. And you're not going to rely just on
2  what your attorney has represented.
3    THE DEFENDANT: That's what I said. I will rely on
4  that.
5    THE COURT: You desire to do that.
6    THE DEFENDANT: Yes, ma'am.
7    THE COURT: All right. Let's proceed, then.
8    MS. REDMOND: And would you agree, Mr. Pippin, that
9  those images had been -- let me go back. Did you use your
10  computer's Internet connection to get those images of child
11  pornography onto your computer?
12    THE DEFENDANT: Yes, ma'am.
13    MS. REDMOND: Judge, I believe that is sufficient.
14    THE COURT: I think we're missing the interstate or
15  foreign commerce element.
16    MS. REDMOND: I apologize. I actually thought I had
17  covered it.
18    Would you agree that -- well, let me go back.
19    Counsel, can you and will you stipulate that the use of
20  the Internet requires interstate transportation?
21    MR. NORTHCUTT: Yes, ma'am.
22    THE COURT: All right. Do you agree with that too,
23  Mr. Pippin?
24    THE DEFENDANT: Yes, ma'am.
25    MS. REDMOND: Thank you, Judge.

21

1    THE COURT: Mr. Pippin, let me ask you. How do you now
2  plead to the charges against you in counts one, two, three, and
3  four of the indictment, guilty or not guilty?
4    THE DEFENDANT: Guilty, Your Honor.
5    THE COURT: It is the finding of the Court in the case
6  of United States versus Ernest Pippin that the defendant is
7  fully competent and capable of entering an informed plea, that
8  the defendant is aware of the nature of the charges and the
9  consequences of the plea, and that the plea of guilty is a
10  knowing and voluntary plea supported by an independent basis in
11  fact containing each of the essential elements of the offense.
12  The plea is therefore accepted, and the defendant is now
13  adjudged guilty of those offenses.
14    A written presentence report will be prepared by the
15  probation office to assist the court in sentencing. You will be
16  asked to give information for the report, and your attorney may
17  be present for that if you wish. The court will permit you and
18  your counsel to read the presentence report and file any
19  objections to it before the sentencing hearing, and you and your
20  counsel will have the opportunity to speak on your behalf at the
21  sentencing hearing. The date for sentencing will be set by
22  order. And until that time, I will remand you to the custody of
23  the United States Marshal.
24    MR. NORTHCUTT: Your Honor, at this time, we'd like to
25  make a motion for him to be released pending the sentencing

22

1  hearing.  We have a written motion to that effect; and we'd also
2  like to be heard orally, if that's possible.
3       THE COURT:  Well, I'll hear you.  I haven't seen the
4  written motion.
5       (The motion is tendered to the Court)
6       THE COURT:  Let me just confirm before you understand,
7  my understanding is that there is a presumption of detention; is
8  that correct?
9       MS. REDMOND:  That is correct, Your Honor.
10      THE COURT:  All right.
11      MR. NORTHCUTT:  Your Honor, if I may, I'm going to ask
12  that I'll cover this for you as we go.  Mr. Pippin, his two
13  prior offenses were over 14 years ago.  And they were, of
14  course, at that time with -- his daughters were the victims at
15  that time.  He went -- underwent counseling, and his two
16  daughters are here today.  They did regain a father-daughter
17  relationship.  And both of them have said in the affidavit
18  attached hereto that they don't believe that he would be capable
19  of harming or touching any other children or any other people
20  outside of -- or anybody else.  They've also said that at this
21  time they would trust him if he was released pending
22  sentencing.  And they are both here, Your Honor, today.
23      THE COURT:  I see them in the courtroom.
24      MR. NORTHCUTT:  Further, Your Honor, since it's been 14
25  years and there's no allegations whatsoever of any member in his

23

1  community being put at risk, we certainly don't think and
2  there's no evidence to show that he would be a risk to anyone in
3  the community or in his area, because for 14 years there's just
4  no evidence that he's ever done anything similar to what he was
5  charged with 14 years ago.  Furthermore, there's a statement --
6       THE COURT:  Counsel, he's just pled guilty to four
7  counts, though, in this Court.
8       MR. NORTHCUTT:  Yes.  Yes, ma'am.  And that's what we
9  were going to address, is while we know that there's a victim in
10  any type of child-related pornography, I think the standard
11  would be if he posed any risk to those in his neighborhood or
12  area or any risk to anybody else upon his release.  Of course,
13  now, the computer has been removed, so that's not a problem
14  where he lives.  And again, there's absolutely nothing -- no
15  evidence that even in 2000 when he started looking at this
16  pornography, from that time on, that anybody has been put
17  anywhere at risk or the threat of harm because of any of this
18  gentleman's actions.  So that's 14 years of not being a threat
19  to the community he lives in other than on the Internet, which
20  has now been removed from his home, so that wouldn't be a
21  problem.
22      He also has five sisters, four which live in this area,
23  Your Honor, and they're all willing to help supervise, along
24  with his wife, to make sure that anything this Court orders him
25  to do, he'll be willing to do.  And again, there's no Internet,

24

1  no computers involved in their homes, so there's no problem
2  about him looking at that.  And there's certainly no proof
3  that he would pose any threat to anyone around their home.
4       His employer, Your Honor, has written a letter to the
5  Court also indicating that he is very responsible and they've
6  never seen in the years he's been working for them any type of
7  behavior like he was charged with.
8       His residence is there in Lee County.  And all his
9  family members live around him, so there's no place that he's
10  really going to go or can go.  He has no money to flee, so we
11  don't think he would be a flight risk.
12      The government had maintained to me at one time that he
13  wouldn't have anything to lose now that he's pled guilty.  If
14  he's released back in the community, he might do something
15  wrong.  Well, we beg to differ, Your Honor.  He's not been
16  sentenced yet, so he has a shot at 11 years.  He's 57 years
17  old.  He'd be 68 before he got out.  Fifteen or even more than
18  that, he's got a huge risk of dying in prison.  So he's got a
19  heavy hammer over his head to make sure that he didn't go out
20  and commit anything else, not to mention the fact that I've
21  already mentioned there's no evidence that he's ever threatened
22  anybody since 1992, touched anybody, or done anything
23  inappropriate for those past 14 years.  So we don't think that
24  he would be a risk to those in the community.
25      At all times he's been cooperative with the

25

1  government.  He made a statement when the FBI came out and the
2  local law enforcement.  So at all times he's cooperated with
3  this Court, and we just don't -- we would ask the Court, being
4  of his age and the fact that he will be over 68 years old on his
5  release, that he be given the opportunity to go home and make
6  some arrangements for his wife and family since it appears that
7  he'll no longer have his income.  His wife is unemployed, and he
8  needs to make some type of arrangements for her in his absence.
9  And that's why we're asking the Court, if you would, to please
10  sentence -- presentence release him.
11      THE COURT:  I'll hear from the government.
12      MS. REDMOND:  Judge, the government is of the opinion
13  that -- as it was at the time of the defendant's arraignment and
14  prior detention, that this is a crime of violence; the defendant
15  should be detained.  We are still of that mind, even more so now
16  that he has in fact acknowledged guilt and pled guilty before
17  this Court.  I don't believe that the information provided here
18  by the defense and through its written motion is sufficient to
19  allow this Court by statute to make a finding that there are
20  extraordinary reasons to allow his release and to protect the
21  community.  And I think -- and I know that this Court has taken
22  up this issue before, specifically in the case of Timothy
23  Williams, and I simply don't believe that a record has been
24  sufficiently established that would permit the Court at this
25  juncture to take -- to release the defendant in this case.

26

1  THE COURT: And the pretrial services officer did speak

2  with me briefly in this regard, and my understanding is her

3  recommendation is not to release the defendant; is that correct?

4  PRETRIAL OFFICER: That's correct, Your Honor.

5  THE COURT: Mr. Northcutt, I appreciate your efforts,

6  and I very much appreciate the efforts of the family behind

7  you. I know this is a difficult time for everybody. I am bound

8  by statute. I have to find extraordinary reasons for release

9  when there is a statutory presumption of detention. The case

10 law on extraordinary reasons is pretty clear and pretty narrow;

11 and the desire of the defendant, although it's an understandable

12 desire to get his affairs in order and provide for his family,

13 would not be considered under the law that I have reviewed to be

14 an extraordinary reason. It's actually a reason shared by most

15 defendants and, by definition, is not such a reason.

16  I'm going to stand by the findings I made in the --

17 pursuant to the detention hearing and in addition tell you that

18 I cannot under the statute release him under these

19 circumstances.

20  So that said, I will remand you to the custody of the

21 United States Marshal. Thank you.

22  THE CLERK: Court is recessed.

23  (Proceedings concluded at 1:17 p.m.)

24

25

27

1  TRANSCRIBER'S CERTIFICATE

2  I certify that the foregoing is a true and correct

3  transcript, to the best of my ability, from the stenographic

4  notes provided to me by Official Court Reporter James R.

5  Dickens.

6  This 28th day of September, 2007.

7

8  /s/ Risa L. Entrekin
   Registered Diplomate Reporter
9  Certified Realtime Reporter
   Official Court Reporter
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **V.** | ) | **PRESENTENCE INVESTIGATION REPORT** |
| | ) | |
| **ERNEST PIPPIN** | ) | **Docket No.: 3:06cr150-MHT** |
| | ) | |

---

| | |
|---|---|
| **Prepared For:** | The Honorable Myron H. Thompson<br>United States District Judge |
| | |
| **Prepared By:** | Terrence N. Marshall<br>United States Probation Officer<br>Montgomery, AL<br>(334) 954-3243 |

| | |
|---|---|
| **Assistant U.S. Attorney** | **Defense Counsel** |
| **Susan R. Redmond** | **Walter M. Northcutt** |
| One Court Square | Walter M. Northcutt & Associates |
| Suite 201 | 323 Thach Avenue |
| Post Office Box 197 | Auburn, AL 36830 |
| Montgomery, AL 36104 | (334) 826-0944 |
| (334) 223-7280 | |

**Sentencing Date:**     October 12, 2006

| | | |
|---|---|---|
| **Offense:** | **Counts 1 and 2:** | Possession of Child Pornography<br>[18 U.S.C. § 2252A(a)(1)]-<br>NLT 15 years - NMT 40 years/$250.000 fine,<br>a Class B felony |
| | **Count 3:** | Possession of Child Pornography<br>[18 U.S.C. § 2252A(a)(5)(B)]-<br>NLT 10 years -NMT 20 years/$250,000 fine,<br>a Class C felony |
| | **Count 4:** | Felon in Possession of a Firearm<br>[18 U.S.C. § 922(g)]-<br>NMT 10 years/$250,000 fine,<br>a Class C felony |



AO886-C
**GOVERNMENT EXHIBIT**
CASE NO.3 :06 CV 613-NPT
EXHIBIT NO. D

| | |
|---|---|
| **Release Status:** | Arrested by the U.S. Marshal's on June 20, 2006, and detained pending sentencing. |

**Detainers:**                   None known.

**Codefendants:**             None.

**Related Cases:**           None Known.


**Date Report Prepared:** September 21, 2006

**Date Report Revised:**  October 5, 2006

## Identifying Data:

| | |
|---|---|
| **Date of Birth:** | April 22, 1949 |
| **Age:** | 57 |
| **Race:** | White |
| **Sex:** | Male |
| | |
| **S.S. #:** | 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 |
| **FBI #:** | 208676S11 |
| **USM #:** | 11970-002 |
| **Other ID #:** | N/A |
| | |
| **Education:** | G.E.D. |
| **Dependents:** | One |
| **Citizenship:** | USA |
| | |
| **Previous Residence:** | 775 Lee Road 346 |
| | Salem, AL 36874 |
| | |
| **Current Address:** | c/o Montgomery City Jail |
| | P. O. Drawer 159 |
| | Montgomery, AL 36101 |
| | |
| **Aliases:** | Ernest Eugene L. Pippin, Jr. |
| | Ernest E. Lynwood Pippin, Jr. |
| | Ernest Eugene Lynwood Pippin |
| | Ernest Eugene Pippin, Jr. |
| | Earnest Eugene Pippin |
| | J.R Pippin |

**Restrictions on Use and Redisclosure of Presentence Investigation Report.** Disclosure of this presentence investigation report to the Federal Bureau of Prisons and redisclosure by the Bureau of Prisons is authorized by the United States District Court solely to assist administering the offender's prison sentence (*i.e.,* classification, designation, programming, sentence calculation, pre-release planning, escape apprehension, prison disturbance response, sentence commutation, or pardon) and other limited purposes, including deportation proceedings and federal investigations directly related to terrorist activities. If this presentence investigation report is redisclosed by the Federal Bureau of Prisons upon completion of its sentence administration function, the report must be returned to the Federal Bureau of Prisons or destroyed. It is the policy of the federal judiciary and the Department of Justice that further redisclosure of the presentence investigation report is prohibited without the consent of the sentencing judge.

## PART A.  THE OFFENSE

### Charge(s) and Conviction(s)

1.    On June 14, 2006, a four-count indictment was filed in the District Court of the United States for the Middle District of Alabama, Eastern Division, charging Ernest Pippin with distribution and possession and receipt of child pornography and felon in possession of a firearm.  Specifically, Counts 1 and 2 of the indictment charges that on or about February 25, 2003, and March 21, 2003, within the Middle District of Alabama, Ernest Pippin did knowingly mail and transport and ship in interstate and foreign commerce by any means, including by computer, any child pornography in violation of 18 U.S.C. § 2252A(a)(1).

2.    Count 3 of the indictment charges that on or about March 16, 2005, within the Middle District of Alabama, Ernest Pippin did knowingly possess any book, magazine, periodical, film, videotape, computer disk, and any other material that contains, an image of child pornography that has been mailed, shipped, and transported in interstate, and foreign commerce by any means, including by computer, in violation of 18 U.S.C. § 2252A(a)(5)(B).

3.    Count 4 of the indictment charges that on or about March 16, 2005, Ernest Pippin, having previously been convicted of felonies, Sexual Abuse in the First Degree in the Circuit Court of Russell County, Alabama (CC 92-76 and 92-77), crimes punishable by imprisonment for a term exceeding one year under the laws of the State of Alabama, Pippin did possess firearms, to wit: a Charter Arms, Undercover, .38 caliber revolver, serial number 542073; a Llama, .380 caliber semi-auto pistol, serial number A89106; and Excam, GT-27, .25 caliber semi-auto pistol, serial number M17052; a Chamri, 12 gauge shotgun, serial number 295778; a Stevens, Model 940, unknown caliber shotgun, serial number unknown; a Hercules, 410 gauge shotgun, serial number unknown; a Springfield Armory, Model 1903, serial number unknown, better descriptions of which are unknown to the Grand Jury, in violation of 18 U.S.C. § 922(g)(1).

4.    The indictment also contained two forfeiture allegations regarding property and firearms seized from Pippin on March 16, 2005.  A preliminary order of forfeiture was entered on August 10, 2006.

5.    On August 3, 2006, Ernest Pippin appeared before the Honorable Susan Russ Walker and entered a plea of guilty to counts 1, 2, 3, and 4 of the indictment pursuant to a Rule 11(c)(1)(C) agreement.  In exchange for his guilty plea, the government agreed to recommend a three-level reduction for acceptance of responsibility, and agreed to recommend a sentence of not more than 15 years on Counts 1 and 2, not more than 10 years on Count 3, and not more than 7 years on Count 4, all to run concurrently with each other.  Pippin agreed to stipulate that he has two prior convictions for Sexual Abuse First Degree, agree to a sentence of not less than 11 years, agree to stipulate to the forfeiture of the firearms listed in Count 4 and any ammunition seized by the government and agree to a term of supervised release of Life.  He also waived his right to appeal the conviction, except for grounds of ineffective assistance of counsel or prosecutorial misconduct, or collaterally

attack the sentence in any post-conviction proceeding. Pippen was ordered detained pending sentencing.

## The Offense Conduct

6.   This investigation began after Yahoo! Inc. and Microsoft Corporation filed Cybertip reports to the National Center for Missing and Exploited Children (NCMEC) regarding child pornography images being posted by Microsoft Network Groups and subscribers to a website titled http://groups.msn.com/Thepowerpuffgirlspalace. NCMEC reported the activity to the Federal Bureau of Investigation (FBI). On March 21, 2003, agents discovered that Ernest Pippin had posted thirteen child pornography images of naked prepubescent girls exposing their vagina and frontal nudity to the website.

7.   On April 6, 2003, Catherine Taelor of Microsoft Corporation, filed a Cybertip report #118324 reporting child pornography images being posted to http://groups.msn.com/Thepowerpuffgirlspalace.

8.   On May 8, 2003, Stacey Neal, Investigative Analyst, FBI, subpoenaed Microsoft Corporation to obtain account/subscriber information for the website. IA Neal received a compact disk which contained messages, website member lists, and images from the site. The investigation discovered that the email address junbug1949@cs.com had posted numerous images to the website. Another subpoena was issued to CompuSeve Interactive Services, Inc. requesting subscriber information for junbug1949@cs.com.

9.   On July 23, 2003, the results from the inquiry revealed the account, junbug1949@cs.com, belonged to Ernest Pippin, of Salem, Alabama, residing at 775 Lee Road 346. IA Neal found out that the site was created on December 24, 2002, was a "community" site in which people could visit, chat, share and post images about particular subject, and was dedicated to discussions and sharing of child pornography images in various states. The site contained 210 images, 19 photo albums, and a message on the message board explaining that in order to maintain membership in this "community", you must upload at least five images of child pornography to the online photo album or you will be removed from the member list. Ernest Pippin, using the screen name "roadrunner", became a member of the group on February 22, 3003.

10.  On August 25, 2003, Cathy McGoff of Yahoo! Inc., filed a Cybertip report #145265 and reported that three images of child pornography had been posted to a Yahoo Group website titled http://groups.yahoo.com/group/johnnylovessweetgirls. The subscriber identified by Yahoo! Inc. used the email address junbug1949@cs.com and screen name of junbug1949. This email address was identified as belonging to Ernest Pippin, 775 Lee Road 346, Salem, Alabama.

11.  On February 25, 2004, Pippin logged, used his screen name "roadrunner", and uploaded five child pornography images. The images depicted a prepubescent boy lying naked on his back with his penis and rectum exposed and an adult female has her mouth on the boy's penis. Another image depicted prepubescent girls lying naked in bed with one of the girls laying on

her side with her mouth on the other girl's nipple, and her hand is in the other girl's genital region. Pippin posted a message after he uploaded the images stating,"Hey, I added some pics to the "MY PICS" album. Hope U Like!!!"

12. On May 10, 2004, Special Agent Christian L. Deeb, FBI, reviewed Pippin's South Trust bank account information and Visa statement. The Visa account number was listed by Compuserve Interactive Services as the method of payment used by the defendant. Special Agent Deeb established that Pippin had paid $21.95 for online services to Compuserve Interactive Services and $9.95 to AOL. The telephone number listed for Compuserve Interactive Services on the bank statement matched the number on Pippin's AT& T telephone bill. It was discovered that from June 5, 2004 through June 19, 2004, Pippen had 136 outgoing telephone calls to AOL dial-up numbers to establish internet connections. The duration of these calls ranged from 1 second, to 3 hours 40 minutes 30 seconds.

13. On July 15, 2004, another Cybertip report, #256907, was filed by Yahoo! Inc. Three child pornography images had been posted to a website titled http://groups.yahoo.com/group/yng_hc_extreme by the email address thexorcist334@cs.com and screen name of roadrunner19492000. One of the three images depicted an adult male ejaculating into a prepubescent girls mouth. The email address was identified as belonging to Ernest Pippin, 775 Lee Road 346, Salem, Alabama.

14. Based upon the above information, the FBI Opelika, Alabama, office obtained a search warrant for Pippin's residence and executed a search on March 16, 2005. Agents seized 122, 5.25-inch disks, 128, 3.5-inch disks, 1 compact disc (CD-R), 20 stand alone hard drives, and a computer from Pippin's residence. Also seized during the search was a Charter Arms, Undercover .38 caliber revolver; a Llama, .380 caliber semi-auto pistol; a Excam, GT-27, .25 caliber semi auto pistol; a Chamri, 12 gauge shotgun; a Stevens, Model 940 caliber shotgun; a Hercules, 410 gauge shotgun; and a unknown brand bolt action rifle with scope. The occupants of the house were interviewed and it was determined which computer Pippin used and that his wife, Eugenia Pippin was aware of Pippin's activities but very rarely used the computer. Agents questioned Pippin regarding child pornography and he confirmed that he had child pornography images on his computer system and CD's inside the home. All of the child pornography images obtained by Pippin came from chat rooms where individuals share images.The seized evidence was turned over to the Pocatello, Idaho, Information Technology Center. Examination of the seized evidence revealed child pornography on 5 of the compact discs. Agents located 3728 items from his computer hard drive, in which a total of 542 were suspected child pornography images and one was a suspected child pornography video.

15. On December 8 and 19, 2005, Special Agent Deeb reviewed the digital images of the hard drive located on Pippin's Chenbro computer tower revealed over 600 images of child pornography, including numerous images of child pornography involving prepubescent minors under 12 years of age. Most of the images involved 12 year old children portraying sadistic or masochistic conduct. At least 25 digital movies that involved child pornography were also found on Pippin's computer.

### Victim Impact

16. There are no known identifiable victims in this case which can be directly compensated via restitution as a result of the defendant's instant offense.

### Adjustment for Obstruction of Justice

17. The probation officer has uncovered no information suggesting that the defendant impeded or obstructed justice.

### Adjustment for Acceptance of Responsibility

18. The defendant entered a plea of guilty to counts 1, 2, 3 and 4 of the indictment pursuant to a plea agreement. During his guilty plea colloquy, the defendant fully admitted his guilt as to the counts in the indictment.

### Offense Level Computation

19. The Supplement to the 2005 edition of the Guidelines Manual effective March 27, 2006, has been used in this case. According to U.S.S.G. §3D1.1, when a defendant has been convicted of more than one count, the court shall group the counts into distinct groups of closely related counts by applying the rules in U.S.S.G. §3D1.2 if the counts involve substantially the same harm. Counts 1, 2 and 3 qualify as groupable offenses under section 3D1.2(b). Pursuant to U.S.S.G. §3D1.4, the combined offense level is determined by taking the offense level applicable to the Group with the highest offense level and increasing that offense level by the amount indicated in the table. The offense level under §2G2.2 is the applicable guideline as it is higher than the guideline offense level for Count 4 under section 2K2.1.

20. The guideline for a violation of 18 U.S.C. §§ 2252A(a)(1) and 2252A(a)(5), is found at U.S.S.G. §2G2.2, Distribution and Possession of Child Pornography.

21. **Base Offense Level:** The base offense level for possessing and trafficking of material involving the sexual exploitation of a minor is 22. U.S.S.G. §2G2.2(a)(2)      **22**

22. **Specific Offense Characteristics:** Pursuant to U.S.S.G. §2G2.2(b)(2), if the material involved a prepubescent minor or a minor under the age of twelve years, increase by 2 levels. Numerous images of child pornography involving pre-pubescent and/or children under the age of 12 were discovered on Pippin's computer, therefore, 2 levels are added.      **+2**

23. **Specific Offense Characteristics:** Pursuant to U.S.S.G. §2G2.2(b)(3)(B), if the offense involved the distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain, increase by 5 levels. Agents established during the examination of Pippin's computer that the defendant participated in the trading of child pornography with individuals via chat rooms and e-mails, therefore, 5 levels are added.      **+5**

24. **Specific Offense Characteristics:** Pursuant to U.S.S.G. §2G2.2(b)(4), if the offense involved material that portrays sadistic or masochistic conduct or other depictions or violence, increase by 4 levels. Several images seized from the defendant's Chenbro computer contained images of child pornography involving children under 12 years of age portrayed sadistic or masochistic conduct, thereby, qualifying as sadistic or masochistic

*Presentence Investigation Report*

material.                                                                                                    +4

25.  **Specific Offense Characteristics:** Pursuant to U.S.S.G. §2G2.2(b)(6), if a computer was used for the transmission of the material or a notice or advertisement of the material, increase by 2 levels. The defendant used his computer for the receipt and transmission of images of child pornography, therefore, 2 levels are added.                                    +2

26.  **Specific Offense Characteristics:**  Pursuant to U.S.S.G. §2G2.2(b)(7)(D), if the offense involved 600 or more images, increase by 5 levels. Pippin's Chenbro computer tower revealed over 600 images of child pornography, including numerous images of child pornography involving prepubescent minors under 12 years of age. Most of the images involved 12 year old children portraying sadistic or masochistic conduct. At least 25 digital movies that involved child pornography were also found on Pippin's computer, therefore, 5 levels are added.                                                                      +5

27.  **Adjustment for Role in the Offense:** None                                   0

28.  **Victim-Related Adjustments:** None                                           0

29.  **Adjustment for Obstruction of Justice:** None                               0

30.  **Adjusted Offense Level** (Subtotal):                                         **40**

     **Group 2: Count 4- Felon in Possession of a Firearm**

31.  **Base Offense Level:**   The base offense level for a violation of 18 U.S.C. § 922(g) is found at U.S.S.G. §2K2.1(a)(6), which indicates that if the defendant was a prohibited person at the time he committed the instant offense, the base offense level is 14. Pippin was a convicted felon at the time he committed the instant offense.                                **14**

32.  **Specific Offense Characteristics:** Pursuant to U.S.S.G. §2K2.1(b)(A), if the offense involved 3 to 7 firearms, increase by 2. FBI agents seized 1) a Charter Arms, Undercover .38 caliber revolver; 2) a Llama, .380 caliber semi-auto pistol; 3) a Excam, GT-27, .25 caliber semi auto pistol; 4) a Chamri, 12 gauge shotgun; 5) a Stevens, Model 940 caliber shotgun; 6) a Hercules, 410 gauge shotgun; and 7) a unknown brand bolt action rifle with scope. Therefore, two levels are added.                                         +2

33.  **Adjustment for Role in the Offense:** None                                   0

34.  **Victim-Related Adjustments:** None.                                          **0**

35.  **Adjustment for Obstruction of Justice:** None                               0

36.  **Adjusted Offense Level** (Subtotal):                                         **16**

Multiple Count Adjustment (See U.S.S.G. §3D1.4)

| | | | Units |
|---|---|---|---|
| 37. | Adjusted Offense Level for Group 1- Possession/Distribution of Child Pornography ............................................................................................... 40 | | 1 |
| 38. | Adjusted Offense Level for Group 2- Felon in Possession of a Firearm........ 16 | | 0 |
| 39. | Total Number of Units................................. | | **1** |
| 40. | Greater Adjusted Offense Level................... | 40 | |
| 41. | Increase in Offense Level............................ | 0 | |

42.    **Combined Adjusted Offense Level**                                                    **40**

43.    **Adjustment for Acceptance of Responsibility:** Pursuant to U.S.S.G. §§3E1.1(a) and (b), if the defendant clearly demonstrates acceptance of responsibility for the offense, decrease the offense level by 2 levels. The defendant fully admitted the conduct as charged, therefore, he is eligible for a two level decrease in his offense level. Upon motion of the government stating that the defendant assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, decrease the offense level by 1 additional level. Pursuant to the plea agreement, the probation officer anticipates government counsel filing said motion authorizing the additional one level decrease.                                                                                                                    **-3**

44.    **Chapter Four Enhancements:** None                                                        **0**

45.    **Total Offense Level:**                                                                          **37**

**PART B. DEFENDANT'S CRIMINAL HISTORY**

**Juvenile Adjudications**

46.    None known.

**Adult Criminal Convictions**

| | **Date of Arrest** | **Conviction/ Court** | **Date Sentence Imposed/ Disposition** | **Guideline/ Points** |
|---|---|---|---|---|
| 47. | 08/17/86 (Age 37) | Driving Under the Influence/Municipal Court, Phenix City, Alabama, Citation No. J0152283 | 11/04/86: Guilty. | §4A1.2(e) |
| | | | | 0 |

Attorney representation unknown. No further details available.

| | | | | |
|---|---|---|---|---|
| 48. | 02/03/92 (Age 41) | Sexual Abuse, First Degree (2 Cases)/Circuit Court, Russell County, Alabama, Case Nos. CC-92-76 and 77 | **03/16/92**: Pled guilty. **04/24/92**: 5 years to run concurrently with CC-92-77, suspended. 90 days in jail and 5 years probation with conditions to attend counseling and not see children without permission from Court. | §4A1.2(e) §4A1.2, comment. (n.3)  **0** |

Defendant was represented by Richard M. Kemmer, Jr. Court indictment reflects that Ernest Eugene Pippin, Jr. did engage in deviate sexual intercourse with Christy and Stacy Pippin, who was less than twelve years of age, while the said Pippen was 16 years old or older. It should be noted that the victims in these cases were the defendant's two daughters.

### Criminal History Computation

49.  The defendant has no known criminal history and a criminal history score of zero points. According to the Sentencing Table (Chapter 5, Part A), zero criminal history points establishes a criminal history category of I.

## PART C. OFFENDER CHARACTERISTICS

### Personal and Family Data

50.  The defendant reported that he was born on April 22, 1949 in Columbus, Georgia, to Helen Othel nee: Tetherow and Ernest Eugene Pippin, Sr which his sisters and wife confirmed. The defendant stated and two of his sisters confirmed that he is the only son and the youngest of 8 children born to this union. The defendant reported that his parents divorced and that he and his sisters were raised by their father and paternal grandmother in the Columbus, Georgia, area. The defendant reported that both of his parents are deceased as verified by his sisters. The defendant reported that all of his surviving sisters continue to reside within the Middle District of Alabama which was also verified. The 57 year old defendant stated that he has resided at the above address with his wife for the past 15 years. Should the Court release the defendant on bond, he advised that he would return to live with his wife. Mrs. Pippin stated that her husband was welcome to continue to reside with her.

51.  According to the subject and verified by Mrs. Pippin, they married in December 1977. She verified that this marriage has resulted in the birth of two daughters, Stacy Pippin, now age 26, and Christy Pippin, now age 24, both reside in the Phenix City, Alabama, and Columbus, Georgia, area.

### Physical Condition

52.    The defendant is 5 feet 9 inches tall and weighs approximately 135 pounds. He has brown eyes and brown/gray hair. He described his overall general physical health as good. He reported experiences with shortness of breath for approximately 1 year due to smoking. He has no tattoos but reported a burn mark on his neck from a carburetor burn approximately 20 years ago.

### Mental and Emotional Health

53.    The defendant advised of no history involving mental illness or treatment. Pippin did advised that he received counsel as a result of his 1992 Sexual Abuse First Degree convictions. Court records reflect that he was ordered to attend counseling with Dr. Jeitouni in Columbus, Georgia, as a result of his sexual abuse of his two daughters. The defendant advised that the counseling involved himself, his family and with his children.

### Substance Abuse

54.    According to the defendant, he drank mixed drinks daily prior to his arrest for the instant offense. He also reported that he last smoked marijuana in 2000.

### Education and Vocational Skills

55.    The defendant reported that he dropped out of Jordan Vocational High School during his 12th grade year. He advised that in 1991, he obtained his GED from Chatahooche Valley Community College, Phenix City, Alabama.

### Employment Record

56.    According to the defendant, he had been employed as a machinist with Gentry Machine Works in Columbus, Georgia, for the past 6 years.

57.    The defendant further reported that from 1991 to 2000 he was employed as a tool maker with PCI in Columbus, Georgia.

58.    He further reported previous employment with Gentry Machine Works from 1981 to 1991; J &W Metal Fabrication in Columbus, Georgia, from 1980 to 1981 and self employment with Tip Top Tree Service from 1978 to 1980.

### Financial Condition: Ability to Pay

59.    The defendant completed a financial affidavit for consideration of court appointed counsel. Mrs. Pippin confirmed that the following assets: cash on hand $200; a 2000 Saturn valued at $6,000; a 1988 Mazda Pickup valued at $1,500; a Mobile Home valued at $12,000 and a residential lot valued at $16,500. The defendant reported one liability of $800 in medical bills. The defendant has been detained since June 20, 2006, has no monthly income, and his wife is unemployed. Mrs. Pippin also verified that they filed bankruptcy in 1992. The defendant does not have the ability to pay a fine.

## PART D.  SENTENCING OPTIONS

*Pursuant to the ruling in <u>United States v. Booker</u>, 125 S.Ct. 738 (2005), the United States Sentencing Guidelines are only advisory and are not binding on the court.*

### Custody

60.  **Statutory Provisions:** The authorized term of imprisonment for counts 1 and 2, class B felonies, is not less than 15 years nor more than 40 years, pursuant to 18 U.S.C. §2252A(b)(1).  The authorized term of imprisonment for count 3, a Class C felony, is not less than 10 years and not more than 20 years, pursuant to 18 U.S.C. § 2252A(b)(2).  The authorized term of imprisonment for count 4, a Class C felony, is not more than 10 years, pursuant to 18 U.S.C. § 924(a)(2).

61.  **Guideline Provisions:**  Based on a total offense level of 37 and a criminal history category of I, the guideline imprisonment range is 210 to 262 months.  (Zone D).

### Impact of Plea Agreement

62.  The defendant pled guilty to counts 1, 2, 3 and 4 of the indictment in accordance with a written plea agreement filed under the provisions of Rule 11(c)(1)(C) of the *Federal Rules of Criminal Procedure*. The government agreed to recommend a sentences of not more than 15 years on counts 1 and 2, not more than 10 years on count 3, and not more than 7 years on count 4, all to run concurrently with each other. Pippin stipulated that he has two prior convictions for Sexual Abuse First Degree and agreed to a sentence of not less than 11 years and a supervised release term of Life. The plea agreement does impact the computation of the advisory guidelines. Pursuant to U.S.S.G. §6B1.2(c)(2), in the case of a plea agreement that includes a specific sentence (Rule 11(c)(1)(C)), the court may accept the agreement if the court is satisfied that the agreed sentence departs from the applicable guideline range for justifiable reasons.

### Supervised Release

63.  **Statutory Provisions:** The authorized term of supervised release for counts 1 and 2, Class B felonies, is not more than five years, pursuant to 18 U.S.C. § 3583(b)(1). Pursuant to 18 U.S.C. § 3583(k), notwithstanding subsection (b), the authorized term of supervised release for these offenses are any term of years, or Life.  The authorized term of supervised release for counts 3 and 4, Class C felonies, is not more than three years, pursuant to 18 U.S.C. § 3583(b)(2).

64.  **Guideline Provisions:**  Pursuant to U.S.S.G. §5D1.1(a), the court shall order a term of supervised release to follow imprisonment when a sentence of imprisonment of more than one year is imposed, or when required by statute. The authorized term of supervised release for counts 1 and 2 is at least three years but not more than five years, pursuant to U.S.S.G. §5D1.2(a)(1).  The authorized term of supervised release for counts 3 and 4 is at least two years but not more than three years, pursuant to U.S.S.G. §5D1.2(a)(2).  In accordance with

U.S.S.G. §5D1.2(b)(2), the maximum terms of supervised release for counts 1, 2 and 3 may
be for a period up to and including Life. However, the related Policy Statement suggests the
statutory maximum term of supervised release be imposed.

**Probation**

65.    **Statutory Provisions:** The defendant is not eligible for probation under the provisions of 18
U.S.C. § 3561(a) because counts 1 and 2 are Class B felonies. Pursuant to 18 U.S.C. § 3561,
the defendant is eligible for a sentence of probation on counts 3 and 4. The authorized term
of probation for a Class C felony is not less than one nor more than five years, pursuant to
18 U.S.C. § 3561(c)(1).

66.    **Guideline Provisions:** The defendant is ineligible for probation because the applicable
guideline range is in Zone D of the Sentencing Table. U.S.S.G. §5C1.1(f).

**Fines**

67.    **Statutory Provisions:** The maximum fine for this offense is $250,000 per count, pursuant
to 18 U.S.C. § 3571(b)(3).

68.    A special monetary assessment of $100 per count is mandatory, pursuant to 18 U.S.C. §
3013. The total assessment owed is $400.

69.    **Guideline Provisions:** The fine range for the instant offense is from $20,000 to $200,000,
pursuant to U.S.S.G. §5E1.2(c)(3).

**Restitution**

70.    **Statutory Provisions:** Pursuant to 18 U.S.C. § 2259(a), (b)(1) and (b)(2), notwithstanding
§ 3663 and § 3664A, and in addition to any other civil or criminal penalty authorized by law,
the court shall order restitution for any offense under Chapter 110, Sexual Exploitation and
Other Abuse of Children. An order of restitution under this section shall be issued and
enforced in accordance with § 3664 in the same manner as an order under § 3663A, and shall
direct the defendant to pay the victim the full amount of the victim's losses as determined
by the court. The victims in this case are currently unknown.

71.    **Guideline Provisions:** Restitution for the full amount of the victim's losses is authorized
in cases where the victims are identifiable. U.S.S.G. §5E1.1. However, pursuant to U.S.S.G.
§5E1.1(b)(2), the provisions of subsection (a) do not apply to a restitution order under 18
U.S.C. § 3663 if the court finds, from facts on the record, that the number of identifiable
victims is so large as to make restitution impracticable or (b) determining complex issues of
fact related to the cause or amount of the victim's losses would complicate or prolong the
sentencing process to a degree that the need to provide restitution to any victim is
outweighed by the burden on the sentencing process.

## PART E.  FACTORS THAT MAY WARRANT DEPARTURE

72.    The probation officer has not identified any factors concerning the offense or the offender

which would warrant a departure from the prescribed guideline range.

## PART F.   FACTORS THAT MAY WARRANT A SENTENCE OUTSIDE OF THE ADVISORY GUIDELINE SYSTEM

73.   Presentation of information in this section does not necessarily constitute a recommendation by the probation officer for a downward departure

74.   While the probation officer has not identified any factors which would warrant a variance based on the provisions of 18 U.S.C. § 3553(a), the defendant asserts that a variance is warranted because: **1)** he has shown in the past that he is very capable of being quickly rehabilitated from actions committed; **2)** he is clearly no threat to any person or persons, including children, in the area or community in which he works or lives; **3)** he is stable in the community in which he lives and works, is no threat to move from the area, has sufficient supervision in the area, and could be easily monitored; **4)** his age (57 yoa), will be beyond a reasonable age to obtain gainful employment if sentenced to a period of 11 years or more and if sentenced to a short period of time, he could still be a positive contributor to his community, and **5)** he has been cooperative with all authority figures and agencies and would continue to cooperate and be easy to oversee if allowed to be quickly rehabilitated and returned to the community where he can provide for his family and be a contributing member of the community.

Respectfully submitted,

**Chief United States Probation Officer
Leslie Prim Hopek**

By: _Terrence Reg'd Marshall_

Terrence N. Marshall
United States Probation Officer

Approved:

_L. Scott Wright_                    _10/5/06_
L. Scott Wright                    Date
**Supervising United States Probation Officer**

ADDENDUM TO THE PRESENTENCE REPORT
UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA
UNITED STATES V. ERNEST PIPPIN, DKT. #. 3:06CR150-MHT

OBJECTIONS

By the Government

1.    No communication was received from Assistant U.S. Attorney Susan R. Redmond indicating any objections to the presentence report.

By the Defendant

2.    On September 27, 2006, defense counsel Walter M. Northcutt advised the Probation Officer that he had objections to the presentence report. All issues were resolved after modifications to the presentence report.

Respectfully submitted,


**Chief United States Probation Officer**

By:/s/ Terrence N. Marshall
        Terrence N. Marshall
        United States Probation Officer


Approved:


/s/ L. Scott Wright            10/05/06
L. Scott Wright               Date
**Supervising United States Probation Officer**

Ernest Pippin                                                           Recommendation
Docket No. 3:06cr150-MHT

defendant be designated to a prison facility that can provide intensive mental health treatment, to include sexual abuse treatment.

It is recommended that the defendant be sentenced to a life term of supervised release on counts 1, 2, and 3 and 3 years supervised release on count 4, all counts to run concurrently. As a condition of supervised release, it is recommended that the defendant be involved in a mental health treatment program for sex offenders.

The probation officer further recommends that the defendant be prohibited from owning or operating a computer with access to any on-line computer service while under supervision. It is recommended that the defendant be prohibited from engaging in any occupation, business or profession that involves minor children or the use of a computer (USSG §5F1.5). Pursuant to 18 U.S.C. § 3583(d), the defendant is subject to a mandatory condition of supervision which requires that he "...report the address where [he] will reside and any subsequent change of residence to the probation officer responsible for supervision, and that [he] register in any State where [he] resides, is employed, carries on a vocation, or is a student."

It is recommended that the defendant be ordered to submit to the search condition and that the defendant cooperate in the collection of DNA.

A fine is not recommended based on the defendant's financial profile. Restitution is not an issue in this case. A $400 assessment fee is mandatory.

**Voluntary Surrender**

It is recommended that the defendant stand committed this date.

                                        Respectfully submitted,

                                        Leslie P. Hopek
                                        Chief U.S. Probation Officer

                                by    /s/ Terrence N. Marshall
                                        Terrence N. Marshall
                                        United States Probation Officer

Approved:

/s/ L. Scott Wright
L. Scott Wright
Supervising United States Probation Officer

TNM

Date: October 5, 2006

1

1          IN THE UNITED STATES DISTRICT COURT
                            FOR
2          THE MIDDLE DISTRICT OF ALABAMA

3

4

5

6   THE UNITED STATES
        OF AMERICA
7                                    CRIMINAL ACTION NO.
            vs.
8                                    3:06-CR-150-MHT
    EARNEST PIPPIN
9

10

11

12

13

14              SENTENCING PROCEEDINGS

15

16

17

18                 *  *  *  *  *  *  *  *  *  *

19

20

21  HEARD BEFORE:      The Hon. Myron H. Thompson

22  HEARD AT:          Montgomery, Alabama

23  HEARD ON:          October 12, 2007

24  APPEARANCES:       Susan R. Redmond, Esq.

25                     Walter M. Northcutt, Esq.

MITCHELL P. REISNER, CM, CRR
Official U. S. Court Reporter
Middle District of Alabama
(334) 265-2500



AO886-C
GOVERNMENT
EXHIBIT

CASE
NO. 3:06CV 613-MH

EXHIBIT
NO.  E

```
1    WHEREUPON, THE FOLLOWING PROCEEDINGS WERE HEARD BEFORE THE HON.
     MYRON H. THOMPSON ON OCTOBER 12, 2006 AT THE UNITED STATES
2    COURTHOUSE IN MONTGOMERY, ALABAMA:

3

4

5            THE COURT:  The Court cause the case of United States

6    of America vs. Ernest Pippin, criminal action number three zero

7    six CR one fifty M. H. T.

8            Now is this Mr. Pippin?

9            THE DEFENDANT:  Yes, sir.

10           THE COURT:  Now, Mr. Pippin, have you and your

11   attorney reviewed the Presentence Report, including any

12   revision that may have been made after the initial disclosure?

13           THE DEFENDANT:  Yes, sir.

14           THE COURT:  Now was there a plea in this case?

15           MR. NORTHCUTT:  Yes, sir, Judge.

16           THE COURT:  Was there a plea agreement?

17           MR. NORTHCUTT:  Yes, sir.

18           THE COURT:  And what was the plea agreement?

19           MR. NORTHCUTT:  Not more than fifteen, not less than

20   eleven.

21           THE COURT:  Is that the extent of the plea agreement?

22           MR. NORTHCUTT:  I'm sorry, go ahead, Ms. Redmond.

23           MS. REDMOND:  Judge, if I may?

24           THE COURT:  Yes.

25           MS. REDMOND:  The plea agreement was given or made
```

1   pursuant to rule eleven C one C of the *Federal Rules of*
2   *Criminal Procedure*. The Government's provisions were that the
3   defendant -- excuse me -- that the Government would file for
4   the third point for acceptance of responsibility; that the
5   defendant, as long as he continued to accept responsibility for
6   his actions, would receive two levels for acceptance of
7   responsibility; that we agreed to recommend a sentence of not
8   more than fifteen years on counts one and two, not more than
9   ten years on count three, and not more than seven years on
10  count four, all counts to run concurrent with each other.

11      The defendant's provisions were to plead guilty to
12  all counts of the indictment, to stipulate that he has two
13  prior convictions for sexual abuse first degree, to a sentence
14  of not less than eleven years, and -- excuse me, to stipulate
15  to the forfeiture of the firearms listed in count four of the
16  indictment and any ammunition seized by the Government to a
17  term of supervised release of life.

18      Additionally, Judge, the defendant waived appeal and
19  collateral attack. He expressly waived the right to appeal
20  conviction and sentence on any ground, including upward
21  departure or variance.

22      THE COURT: Okay.

23      MS. REDMOND: And he agreed to pay an assessment fee
24  of four hundred dollars.

25      THE COURT: Now he had an earlier conviction for

```
 1   sexual abuse of his two daughters who were less than twelve, is
 2   that correct?
 3           MS. REDMOND:  Yes, Your Honor.  And that would be two
 4   separate cases.
 5           THE COURT:  Those are two separate cases?
 6           MS. REDMOND:  Yes, Your Honor.
 7           THE COURT:  And I believe he received what was it,
 8   ninety days or something like that?
 9           MR. NORTHCUTT:  Yes, sir.
10           THE COURT:  How in the heck did he get ninety days
11   for abusing his two daughters?
12           MS. REDMOND:  I can't speak to the state court
13   judge's actions, Your Honor.
14           THE COURT:  That's totally incomprehensible to me,
15   that he would receive ninety days.  I can't imagine why a judge
16   would give him a sentence that low.
17           Probation, can you enlighten me on that?
18           THE PROBATION OFFICER:  No, sir.  It was strange to
19   me also, but Probation hasn't talked with the Court who
20   sentenced him.
21           MS. REDMOND:  And I would point out that those were
22   in fact felony convictions, which normally would not receive a
23   sentence of less than a year and a day.
24           THE COURT:  He received was it ninety days?  And then
25   I believe -- well actually received what, a suspended sentence.
```

1    How much was it?

2        MS. REDMOND:  If I could, Judge, just a minute.  I

3    have those.

4        Judge, upon pleading guilty, the defendant was given

5    a term of punishment of five years in the state penitentiary,

6    on both counts to run concurrent with each other.  One hundred

7    dollar fee to the victim's compensation fund.  He was ordered

8    to serve ninety days in the Russell County jail.  And if I may,

9    Judge, in serving that ninety days he was ordered to report to

10   the jail at twelve-thirty a.m. each morning and be released for

11   work at two p.m. each day during that ninety days that he

12   served in the Russell County jail.

13       THE COURT:  And the offense was for -- Actually, I

14   believe it was deviant sexual intercourse with his two

15   daughters who were less than twelve.

16       MR. NORTHCUTT:  No, Judge, it was amended downward.

17   I talked to the D. A.'s office in Russell County.  The reason

18   his sentence was that was because once they took in the

19   evidence, it was not -- and talked to him and the children --

20   the evidence was much less than what they had initially

21   anticipated the trial evidence being, and the D. A.'s office in

22   order to get this pled agreed to this because the touching

23   didn't amount to what they initially thought it had been.  And

24   that's why it was pled down, and also is why it was given such

25   a short sentence.

1    At that time, Judge, that was in ninety-two, he

2  underwent family counseling.  And his daughters -- D. H. R. has

3  never removed his daughters.  They have stayed in his home.

4  They have reconciled since ninety-two, Judge, when he came out

5  of family counseling, and they are both here to support him

6  today, Your Honor.

7    THE COURT:  The daughters are here to support him

8  today?

9    MR. NORTHCUTT:  Yes.

10    Judge, they have lived with him since that time and

11  grew up in the home, and there was no other incidences after

12  that.  That did happen under the influence of alcohol, Your

13  Honor.

14    THE COURT:  Pardon me?

15    MR. NORTHCUTT:  That happened under the influence of

16  alcohol.  He also went and had alcohol treatment, Your Honor

17  and has had no further drinking problems since ninety-two.

18    THE COURT:  Now what's Probation's position on the

19  plea agreement?

20    THE PROBATION OFFICER:  Probation has no problem with

21  the plea agreement.

22    THE COURT:  Now the guideline range here, however, is

23  significantly higher -- or is it?  What is the guideline range

24  here?

25    THE PROBATION OFFICER:  Two hundred and ten months,

1    Judge, to two sixty-two.

2          THE COURT:  And you're asking for a sentence of

3    fifteen years?

4          MS. REDMOND:  Yes, Your Honor, that is our

5    recommendation.

6          THE COURT:  And that's for -- That would be how many

7    months?

8          MS. REDMOND:  A hundred and eighty, I believe, Judge.

9          THE COURT:  And Probation wants to give him a hundred

10    and eighty months as well?

11          THE PROBATION OFFICER:  Yes, sir, Probation would

12    recommend a hundred and eighty months.

13          THE COURT:  And the guideline range right here is two

14    hundred and ten to two hundred and sixty-two months?

15          THE PROBATION OFFICER:  That's correct, Judge.

16          THE COURT:  What about him warrants a variance from a

17    minimum of two hundred and ten and a maximum of two hundred and

18    sixty two months down to a hundred and eighty months?

19          THE PROBATION OFFICER:  Judge, Probation, we've

20    spoken to counsel, and to be consistent with the plea

21    agreement, we've decided to --

22          THE COURT:  The plea agreement is a minimum of

23    fifteen months -- I mean a minimum of fifteen years, or is it

24    for fifteen years?

25          MS. REDMOND:  It is not more than fifteen years.

1           THE COURT:  Not more than fifteen years.

2           MS. REDMOND:  The statutory minimum is not less than

3     fifteen years on counts one and two.

4           And to be clear, Judge, the Court asked what would or

5     what counsel found as it pertains to this defendant that

6     suggested that fifteen years is appropriate.  Judge, in

7     considering this case and in negotiating the plea agreement, I

8     took into account information supplied by the defendant's

9     family, an understanding and realization of what the actions of

10    the defendant took that make up this offense, the time frame

11    between the prior convictions and this conviction, and in

12    viewing all of those and in reading thirty-five fifty-three A,

13    and my understanding of thirty-five fifty-three A, I felt that

14    fifteen years was a sentence significant enough to punish him,

15    to permit his rehabilitation and to protect the community.

16          In short, Judge, it met the factors under thirty-five

17    fifty-three A, or at least my and reading and understanding of

18    those factors.

19          THE COURT:  What about him, though, warrants a

20    sentence of fifteen years rather than at least two hundred and

21    ten months?  I still haven't heard anything about his

22    circumstances that to me would lift him out of two hundred and

23    ten to the two hundred and sixty-two month range.  The

24    guidelines being advisory.  According to the guidelines that's

25    what I should be giving him.

 1            MS. REDMOND:  That is correct, according to the

 2     guidelines.

 3            THE COURT:  What about him?  What has he done that

 4     warrants my lifting him outside of that range and giving him

 5     literally thirty months less?  Assuming I even go at the low

 6     end of the guideline range, two and-a-half years less, or if I

 7     go at the high end of the guideline range --

 8            MS. REDMOND:  Judge, in looking at this defendant's

 9     behavior --

10            THE COURT:  Six years or so less.

11            MR. NORTHCUTT:  Your Honor, may I be heard on that?

12            THE COURT:  Yes.

13            MR. NORTHCUTT:  Thank you, Your Honor.  Judge, first

14     what we had asked in the way of mitigation of the seventeen

15     and-a-half was the fact that when he was arrested he did take

16     the appropriate steps asked by the Court.  He got treatment.

17     He got his family back together.  And since nineteen ninety-two

18     they continued to be together with no further problems.

19            In addition to that, Your Honor, he has had no other

20     complaints of any kind for anything legally.  At all times he

21     has totally and fully cooperated with all legal -- I mean all

22     law enforcement officials.  They came to his house.  They

23     searched him.  He told them what he had done, what he had been

24     looking at.  And at no time has he tried to shuck his

25     responsibilities as far as legal.

```
1          He went through the counseling.  He kept his family
2    together since ninety-two.  He's maintained employment since
3    that time with no problems, and been a contributing member to
4    society, other than the last eighteen months or so when he
5    started looking at pictures on the Internet that he shouldn't
6    have looked at.  He wasn't been a threat of harm in any way
7    physically to anyone in his community, and after fourteen
8    years, Your Honor, of doing right he did make a mistake, but
9    again, with his age it basically is a life sentence on him
10   anyway.  And we just think that he had turned around by doing
11   what a court asked him to do.  He kept his family together.  He
12   didn't get in any more trouble.  It shows that he can be
13   rehabilitated.
14          He quit being an alcoholic.  He got treatment.  He
15   got treatment with his family, and that was taken care of with
16   no further problems.  So as far as rehabilitatable, Judge, he's
17   a prime candidate for a minimum sentence that you would allow
18   so he can be rehabilitated during that time because he has been
19   proven to be a success in the past once the Court gave him his
20   instructions on how to get better.
21          THE COURT:  What was his conduct here?  What was the
22   nature of the conduct that he engaged in?
23          MR. NORTHCUTT:  On this charge, Your Honor?
24          THE COURT:  On these four charges.
25          MR. NORTHCUTT:  Judge, he was pulling up on the
```

1   Internet -- he was pulling up from groups that offered pictures
2   of teenage girls.  He was pulling those up.  He would pull them
3   up and download the entire file without looking at them, and
4   they did contain some images of children less than twelve.  But
5   he was just pulling them up.  He was looking at them.  And in
6   order to join these groups, you have to post a picture to join
7   the group to get them to then send you their group's
8   photographs.  So he would take them from the groups he had
9   already got them from and download them on to the Internet,
10  they would then allow them to download and copy from their
11  Internet site.
12          There was absolutely no pictures that he ever made or
13  any contact he ever had with any children ever found by
14  investigators where he ever contacted anybody.  In fact --
15          THE COURT:  I understand that these -- well first of
16  all, they were prepubescent children.
17          MR. NORTHCUTT:  Yes, sir.
18          THE COURT:  I further understand that these children
19  were engaged in sexual activity in these pictures.
20          MR. NORTHCUTT:  Yes, sir.
21          THE COURT:  And does he understand that the only
22  reason people out there take these pictures of these children
23  engaging in sexual activity is because people like him look at
24  them?  And because he looks at them, he's the one who creates
25  the market for these children to be abused.

```
 1              MR. NORTHCUTT:  I understand that, Your Honor.

 2              THE COURT:  He's not innocent just because he's

 3       looking at these pictures.

 4              MR. NORTHCUTT:  No, sir, we're not claiming that,

 5       Judge.

 6              THE COURT:  It's not a passive activity under the

 7       law.

 8              MR. NORTHCUTT:  Yes, sir, we understand.  But as far

 9       as we were just pointing together court --

10              THE COURT:  That's why the law says you can't have

11       these pictures of children engaged in sexual activity.

12              MR. NORTHCUTT:  Yes, sir.

13              THE COURT:  So if you're trying to tell me that he

14       has gone the righteous way, he has not.

15              What about the firearms?

16              MR. NORTHCUTT:  Judge, the firearms, four of them

17       were his family's firearms that had been handed down from his

18       father.

19              THE COURT:  He's pled guilty to them.

20              MR. NORTHCUTT:  Yes, sir.  And he did have them in

21       his possession.  He had one pistol.  The other two were his

22       wife's pistols he had given her, but they were in his home and

23       under his possession.  He was holding them for his family, and

24       his sisters are going to take possession of those.

25              THE COURT:  He can't blame looking at pictures of
```

1    these girls engaged in sexual activity on alcohol this time,

2    can he?

3              MR. NORTHCUTT:  No, sir, Judge.

4              THE COURT:  And if I don't accept the plea agreement

5    here, he'll have a right to withdraw his plea, is that correct?

6              MS. REDMOND:  Yes, Your Honor.

7              THE COURT:  Okay.  You're going to have to wait.  I

8    have to think about this one.  I'll move on to the next case.

9              MR. NORTHCUTT:  Yes, sir.

10             (Whereupon, a recess was taken.)

11             THE COURT:  Mr. Pippin, I've decided to go ahead and

12    accept the plea agreement.  Mainly because of your age.  It

13    looks like you're going to be out of commission until you're

14    about seventy anyway.  But I want you to know that I do

15    consider your conduct to be just gross and reprehensible.  The

16    damage you do to the children of this world is just beyond

17    measurement.  People like you just deserve to have the book

18    thrown at them.

19             But I will accept this plea agreement.  And I accept

20    it reluctantly.

21             Is there anything you'd like to say before I announce

22    the proposed sentence?  I'll give you another opportunity to

23    make comments before I decide whether to impose the sentence as

24    announced.

25             THE DEFENDANT:  Your Honor, I'm terribly sorry for

1    what I've done.

2           THE COURT:  I wish you could make it up to all the

3    little girls and boys in those pictures.

4           THE DEFENDANT:  If I could, Your Honor, I would

5    apologize to them.  I would do whatever it took.  I understand

6    that by downloading these pictures I've made a demand that

7    would cause people to want to put more on the Internet, and I

8    realize that now, Your Honor, after I thought about it for a

9    long time.

10          THE COURT:  I think you knew that before.  That's

11   pretty well-known.  You're not saying anything new here.

12          Anything else?

13          THE DEFENDANT:  I would just, if Your Honor could

14   have mercy on me.

15          THE COURT:  I have no mercy for you.

16          Anything else?

17          THE DEFENDANT:  No, sir.

18          THE COURT:  There being no objections, the Court

19   adopts the factual statements contained in the *Presentence*

20   *Report* with specific findings that the offense level is

21   thirty-seven, the criminal history category is one, the

22   guideline term is from two hundred and ten to two hundred and

23   sixty-two months, the supervised release period is from, for

24   counts one and two, is from five years to life.  The supervised

25   release period for count three is from three years to life, and

1    the supervised release period for count four is from two to

2    three years.  The fine range is from twenty thousand to two

3    hundred thousand dollars.

4           The Court, having considered and consulted the

5    sentencing guidelines, and evaluated the reasonableness of the

6    sentence through the lens of Title Eighteen United States Code,

7    Section three five five three, it is the order, judgment and

8    decree of the Court that the defendant is -- now what was the

9    sentence, it was a hundred and --

10           MS. REDMOND:  One hundred eighty months, Your Honor.

11           THE COURT:  Sentenced to a hundred and eighty months.

12    I'm even having difficulty saying it.  It is the judgment of

13    the Court that the defendant is sentenced to a hundred and

14    eighty months.  The term consists of a hundred and eighty

15    months on counts one, two and three, and a hundred and eighty

16    months on count four.  Would that be right?

17           THE PROBATION OFFICER:  Judge, the plea agreement, I

18    think, was for eighty-four -- no more than eighty-four months,

19    seven years.  So that number should be eighty-four months on

20    counts four to run concurrent.

21           THE COURT:  Eighty-four months on count four?

22           THE PROBATION OFFICER:  Yes, sir.

23           THE COURT:  So the terms consist of one hundred and

24    eighty months on counts one, two and three, and eighty four

25    months on count four to be served concurrently.

1          The Court recommends that you be designated to a

2     facility where there is intensive residential mental health

3     treatment, to include sexual abuse therapy where that is

4     available.

5          You shall pay to the United States District Court

6     Clerk a special assessment fee of four hundred dollars, which

7     is due immediately.  Because of your inability to pay, the

8     Court waives the imposition of a fine.

9          It is further ordered that upon release from

10    imprisonment you shall be placed on supervised release for a

11    term of life.  The term consists of life on counts one, two and

12    three, and three years on count four, all such terms to run

13    concurrently.

14         Within seventy-two hours of release from custody you

15    shall report to the probation office in the district to which

16    you are released.  While on supervised release you shall comply

17    with the mandatory and standard conditions of supervised

18    release on file with the Court.

19         The Court also orders the following special

20    conditions.  You shall participate in a program approved by the

21    United States Probation Office for the treatment and monitoring

22    of sex offenders, and you shall contribute to the cost of any

23    treatment based on your ability to pay and the availability of

24    third party payments.

25         You shall submit to a search of your person,

1    residence, office and vehicle pursuant to the search policy of
2    the Court.
3        You shall cooperate with the probation officer in the
4    collection of D N A as directed by the probation officer.
5        You shall register with the state sex offender
6    registration agency in any state where you reside or are
7    employed, carry on a vocation or where you are a student.
8        You are prohibited from owning or operating a
9    computer while under supervision.  You shall not possess or use
10   a computer with access to any online computer service at any
11   location, including employment.  This includes any Internet
12   service provider, bulletin board system or any other public or
13   private computer network.
14       You shall not possess or use any data encryption
15   technique or program.
16       You shall submit to the probation officer and/or
17   probation service representative conducting periodic
18   unannounced examinations of your computer equipment, including
19   any computers in your residence which may include retrieval and
20   copying of all data from the computer, and any internal or
21   external peripherals to ensure compliance with your conditions
22   of supervision, and/or removal of such equipment for the
23   purpose of conducting a more thorough inspection and allow at
24   the direction of the probation officer installation on your
25   computer at your expense any hardware or software systems to

monitor your computer use.  Actually, you're not even supposed

to own a computer.

You are prohibited from engaging in any occupation,

business or profession that involves minor children or the use

of a computer.

The Court finds that there is no identifiable victim

who incurred a financial loss as a result of this offense.  The

sentence is imposed at one hundred and eighty months because of

the defendant's prior sex offenses, and seems sufficient to

address the sentencing objectives of punishment as it relates

to the elements of this case.

Now I ask you at this time, are there any objections

to the sentence imposed or to the manner in which the Court

pronounced it, other than those objections previously stated

for the record?  For example, do you have any objection to the

Court's ultimate findings of fact or conclusions of law?

Furthermore, you are instructed that if you have an objection,

you must not only state the objection, you must give the

grounds for the objection.

MR. NORTHCUTT:  No, sir.

THE COURT:  I ask you, Mr. Pippin, do you have

anything to say as to why the sentence as announced should not

be imposed, or do you have anything to say in mitigation of the

sentence?

THE DEFENDANT:  No, sir.

1        THE COURT:  It is the order, judgment and decree of

2    the Court that the sentence as announced is hereby imposed.

3        Now to the extent that you have a right to appeal,

4    you have ten days to file any notice of appeal.  If you cannot

5    afford the cost of an appeal, the Court will allow to you

6    appeal at no cost, including furnishing you with a free

7    transcript and a free attorney.

8        MR. HARMON:  Your Honor, the Court had entered

9    earlier a final order of forfeiture in this case.  The Court

10    was able to enter the final order because upon its earlier

11    entry of the preliminary order of forfeiture in August of this

12    year, the United States published the proposed forfeiture, two

13    individuals filed petitions to change the earlier preliminary

14    order of forfeiture.  That would have been Miss Eugenia Pippin

15    and Miss Patty Thorp.

16        Upon consultation with counsel for these two

17    petitioners, the United States and Miss Thorp entered into an

18    agreement whereby the three pistols, handguns that were

19    included in the original preliminary order of forfeiture, were

20    to be forfeited to the United States.  There were four long

21    guns, Your Honor, that the United States agreed to return to

22    their attorney of record, and he was to give them I believe to

23    Miss Thorp as family heirloom loom weapons.

24        We would ask the Court to issue the final forfeiture,

25    and to make it part of your oral pronouncement of judgment.

1          THE COURT:  The order of forfeiture is final, and

2    made as mart of the judgment.

3          MS. REDMOND:  The Government would also ask that the

4    Court make as part of its judgment in sentencing that should

5    the defendant -- or when the defendant is released onto

6    supervised release, that prior to that release occurring, that

7    the Bureau of Prisons conduct a risk assessment and relate that

8    information to the supervising probation officer and make it a

9    part of the Court's record.

10         THE COURT:  Do you mean a risk assessment?  What's

11   that?

12         MS. REDMOND:  B. O. P. on sexual offenders has a --

13   it's not a program, but what they do is psychologists and

14   psychiatrists will evaluate that particular defendant to

15   determine whether or not they are a risk to the community.  And

16   if so, what the level of that risk is.  They then give that

17   information to the supervising probation officer so that proper

18   conditions can be made a part of the release so that the

19   community is safeguarded.

20         THE COURT:  Okay.  The Court orders that the Bureau

21   of Prisons make a risk assessment prior to the release of the

22   defendant and furnish that to the probation officer.

23         THE PROBATION OFFICER:  Judge, I just wanted to make

24   sure.  The terms of imprisonment were one hundred and eighty

25   months on counts one and two?

```
 1            THE COURT:  I'll have to look.

 2            THE PROBATION OFFICER:  And a hundred and twenty

 3    months on count three and eighty-four months on count four?

 4            THE COURT:  No, I don't think that's what I said.

 5    I'll have to look here.

 6            MS. REDMOND:  The term of the plea agreement as to

 7    count three was not more than ten years.

 8            THE COURT:  I said a hundred and eighty months on

 9    counts one, two and three, and eighty-four months on count

10    four.

11            THE PROBATION OFFICER:  It should be a hundred and

12    twenty months on count three, Judge.

13            THE COURT:  So it should be a hundred and eighty

14    months on counts one and two?

15            THE PROBATION OFFICER:  Yes, sir.

16            THE COURT:  And --

17            THE PROBATION OFFICER:  And eighty-four months on

18    count four, all to run concurrent.

19            THE COURT:  The sentence is to reflect the term

20    consists of a hundred and eighty months on counts one and two,

21    a hundred and twenty months on count three, and eighty-four

22    months on count four, all to be served concurrently.

23            MS. REDMOND:  Thank you, Your Honor.

24            THE COURT:  In light of that amendment, though, I ask

25    you again, Mr. Pippin, do you know of any reason as to why the
```

1   sentence as amended should not be imposed, or do you have

2   anything to say in mitigation of the sentence?

3           THE DEFENDANT:  No.

4           THE COURT:  It is the order, judgment and decree of

5   the Court that the sentence as amended is imposed.  To the

6   extent that you can appeal, if you cannot afford the cost of an

7   appeal, the Court will allow you to appeal, including a free

8   transcript and a free attorney.

9           You are in the custody of the marshal.

10

11                      * * * * * * * *

12              COURT REPORTER'S CERTIFICATE

13

14      I certify that the foregoing is a correct transcript

15   from the record of proceedings in the above-entitled

16   matter as prepared by me to the best of my ability.

17      I further certify that I am not related to any of

18   the parties hereto, nor their counsel, and I have no

19   interest in the outcome of said cause.

20      Dated this 26th day of November 2007.

21

22

23                          \s\ Mitchell P. Reisner, CM, CRR
                            MITCHELL  P.  REISNER,  CM,  CRR
                            Official US Dist. Court Reporter
24                          Registered Professional Reporter
                            Certified   Real-Time   Reporter
25